UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IBEW LOCAL 98 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| vs. | ) ) | |
| BEST BUY CO., INC., BRIAN J. DUNN, JIM MUEHLBAUER and MIKE VITELLI, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | DEMAND FOR JURY TRIAL |

## INTRODUCTION AND OVERVIEW

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Best Buy Co., Inc. ("Best Buy" or the "Company") between September 14, 2010 and December 13, 2010, inclusive (the "Class Period"), against Best Buy and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act").

2.      Best Buy is a leading retailer of consumer electronics, often referred to as "CE." The Company is headquartered in Richfield, Minnesota. During the Class Period, Best Buy did business in two operating segments, United States and International, operating 1200 stores in the United States and 2800 stores internationally. Best Buy derives the vast majority of its sales and operating profits from U.S. sales.

3.      On March 25, 2010, Best Buy issued its fourth quarter 2010 ("4Q10") and fiscal year 2010 ("FY 2010") financial results in a press release.[1] In addition to reporting revenues and earnings, the Company made statements concerning demand for the Company's consumer electronics product offerings and the Company's true financial condition. In particular, the Company reported on current and future demand for products offered at its domestic big box stores and made projections for its FY 2011 sales, with revenue of up to $53 billion and earnings per share ("EPS") of up to $3.45-$3.60. The Company also stated it would engage in share repurchases during FY 2011, thus reducing outstanding shares and positively impacting earnings results. The Company insisted,

---

[1]      Best Buy's 2010 fiscal year ended on February 26, 2010.

however, that its FY 2011 EPS forecast of up to $3.60 per share was independent of the impact of such repurchases.

4.     On June 15, 2010, the Company reported its 1Q11 financial results. The Company reported that it had missed Wall Street 1Q11 revenue and earnings expectations, explaining that comparable store sales had declined for its gaming, movies, music and television products. Notwithstanding declining sales, the Company reiterated ***all aspects*** of its FY 2011 forecasts, including its earnings forecasts. The Company also specifically rejected analysts' concerns that demand for its products during the remainder of the fiscal year might not be strong enough to make up for the Q1 shortfall.

5.     The Class Period begins on September 14, 2010, the day on which the Company reported its financial results for 2Q11 in a press release, again reporting comparable store sales declines and declines in key product categories that had been identified by the Company as the drivers of in store traffic and sales growth:

> ***The comparable store sales results were driven primarily by a decline in customer traffic, partially offset by an increase in average ticket. . . . [T]he low-double digit comparable store sales decline in TVs was driven by a low double-digit decline in unit sales and moderating price declines. . . .***
>
> *. . . [D]omestic market share declined 50 basis points versus the comparable period last year for the three months ended July 2010.*

6.     On the same day, the Company reduced its FY 2011 top-line revenue forecast, but boldly ***increased*** its FY 2011 earnings forecast of $3.45-$3.60 to $3.55-$3.70 per share, assuring investors that notwithstanding slowing sales, the Company was currently "***on track to deliver and exceed our annual EPS guidance.***"

7.      After the Company's September 14, 2010 financial report and conference call, and based on the Company's increased earnings outlook, the Company's stock price increased from a close of $34.65 on September 13, 2010 to $36.73 on September 14, 2010, on trading volume of more than 21 million shares. By September 27, 2010, Best Buy stock was trading above $40 per share.

8.      On November 26, 2010, the day after Thanksgiving (dubbed "Black Friday"), defendant Brian J. Dunn was interviewed by *Bloomberg* and stated that in store traffic, which had been slow in the prior quarters, causing weak financial results, was stronger than it had been in two years:

> *[T]raffic across the country, measured by the lines in front of our stores, is longer this year than last year, and the traffic to our website is greater this year than it was last year.*

*     *     *

> *[T]he traffic reports we have from around the country are better than they were even two years ago.*

9.      On and after November 26, 2010, Best Buy's stock continued to trade at levels above $42 per share.

10.     On December 14, 2010, the Company reported its 3Q11 financial results. The Company's 3Q11 results shocked investors, as the Company reported that as product sales it knew to be weak or declining even as early as June 2010 had continued across the board, it had missed Wall Street revenue expectations by a wide margin, reporting $0.54 per share, compared to Wall Street consensus estimates of $0.61. On a conference call the same day, defendants attempted to explain the earnings miss:

- *"[S]ales in the US . . . were lower than we expected . . . ."*

- *"[N]ewer technologies, like 3D and IPTV . . . have been slower to take hold."*

- *"The notebook market was weaker than we expected . . . ."*

- *"The gaming sector lagged our expectations."*

- *"[O]ur top-line growth assumptions . . . turned out to be too aggressive . . . ."*

11.     In addition, as a result of weak sales demand and despite the increased FY 2011 earnings forecast in September 2010, the Company slashed its FY 2011 earnings forecast of $3.55-$3.70 to $3.20-$3.40 – well below even the initial FY 2011 earnings forecasts set in March 2010.

12.     Finally, the Company's disclosed that it had repurchased 11 million shares in the quarter, for a total of more than 31 million shares repurchased during the first three quarters of FY 2011. The stock repurchases would have a $0.12 per share *positive* impact on the reduced FY 2011 EPS forecast of $3.20-$3.40. Given the reduced earnings forecast, but for the 31 million shares repurchases, the Company could expect to report FY 2011 EPS of *as low as $3.08 per share*.

13.     This news shocked investors and caused an immediate and massive sell off of the Company's shares on December 14, 2010, and a stock price decline of 22% from a Class Period high of $45.63 per share to close at $35.52 per share on December 14, 2010.

14.     The following facts were known to defendants or deliberately disregarded during the Class Period, rendering the Company's financial forecasts without a reasonable basis as set forth below:

(a)     Demand for Best Buy consumer electronics product offerings was weak or declining and could not support the Company's aggressive FY 2011 sales, revenue, and earnings forecasts;

(b)     The Company's FY 2011 earnings forecast could not be achieved without substantial earnings management and, in particular, a sharp reduction and curtailment of SG&A expenses and aggressive share repurchases which reduced the Company's outstanding shares and increased reported earnings; and

(c)     Despite defendants' statements to the contrary, and because of weak sales demand known to defendants or deliberately disregarded, as of September 14, 2010, the Company was not "on track to deliver and exceed [its] annual EPS guidance" of $3.70 per share.

15.     As a result of defendants' knowingly false and misleading representations and omissions, when the true facts concerning the Company's true financial condition and revenue and earnings prospects for FY 2011 were revealed, investors sold Best Buy shares in massive volume of more than 64 million shares traded, causing an immediate and sharp share price decline from a close of $41.70 per share on December 13, 2010 to $35.52 per share on December 14, 2010.

## JURISDICTION AND VENUE

16.     Jurisdiction is conferred by 28 U.S.C. §1331 and §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

17.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because Best Buy's operations are headquartered in this district and many of the acts and practices complained of herein occurred in substantial part in this district.

## PARTIES

18.     Plaintiff IBEW Local 98 Pension Fund purchased or acquired Best Buy common stock as described in the attached certification and was damaged thereby.

19.     Defendant Best Buy is incorporated in Minnesota and trades on the NYSE under the symbol "BBY." The Company's headquarters are located at 7601 Penn Avenue South, Richfield, Minnesota.

20.     Defendant Brian J. Dunn ("Dunn") is and was, at all relevant times during the Class Period, Chief Executive Officer ("CEO") of the Company.

21.     Defendant Jim Muehlbauer ("Muehlbauer") is and was, at all relevant times during the Class Period, the Chief Financial Officer ("CFO") of the Company.

22.     Defendant Mike Vitelli ("Vitelli") is and was, at all relevant times during the Class Period, President, Americas and Executive Vice President.

23.     The defendants named in ¶¶20-22 are referred to herein as the "Individual Defendants."

## CONTROL PERSONS

24.     As officers and controlling persons of a publicly held company whose common stock was, and is traded on the NYSE and is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's

common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

25.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Best Buy, each of the Individual Defendants had access to the adverse undisclosed information about Best Buy's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Best Buy and its business or adopted by the Company materially false and misleading.

26.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

27.    The Company and the Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Best Buy common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme: (i) deceived the investing public regarding Best Buy's business, operations, management and the intrinsic value of Best Buy common stock; and (ii) caused plaintiff and other members of the Class to purchase Best Buy common stock at artificially inflated prices.

## BACKGROUND TO THE CLASS PERIOD

28.    On March 25, 2010, the Company issued its 4Q10 and FY 2010 financial results in a press release.  The Company reported 4Q10 earnings of $779 million and EPS of $1.82.  The Company reported a comparable-store sales increase of 7% year over year and market share gains of 260 basis points.  In addition, the Company stated its FY 2011 earnings would be $3.45-$3.60 per share.[2]  The press release stated:

**Best Buy's Fourth Quarter Diluted EPS Increases to $1.82**

*        *        *

Best Buy Co., Inc., a leading retailer of consumer electronics, today reported net earnings of $779 million, or $1.82 per diluted share, for its fiscal fourth quarter ended on Feb. 27, 2010 . . . .

*        *        *

The domestic segment experienced a low double-digit comparable store sales increase in notebook computers and a high single-digit increase in comparable store sales in flat-panel televisions.

*        *        *

---

[2]    Best Buy's FY 2011 runs from February 27, 2010 to February 26, 2011.

**Fiscal 2010 Annual Results**

\*      \*      \*

- Total revenue of $49.7 billion, a 10 percent increase year-over-year. . . .
- The company believes domestic market share increased 240 basis points during the 12-months ended Jan. 31, 2010 . . . .
- GAAP net earnings of $3.10 per diluted share, a 30 percent increase year-over-year . . . .

\*      \*      \*

**Best Buy Establishes Fiscal 2011 EPS Outlook of $3.45 to $3.60**.

\*      \*      \*

- ***Revenue of $52.0 billion to $53.0 billion, an increase of 5 percent to 7 percent***.
- ***A comparable store sales increase of 1 percent to 3 percent***.

\*      \*      \*

- ***Earnings per diluted share of $3.45 to $3.60*** . . . .

29.     The March 25, 2010 press release further stated that the Company would engage in share repurchases during FY 2011, thus reducing outstanding shares and positively impacting earnings results.  However, the press release insisted that the Company's 2011 EPS forecast of up to $3.60 per share was independent of the impact of such repurchases:

> The company noted that it has $2.5 billion remaining under its existing board-approved share repurchase authorization and intends to resume share repurchases.  However, ***the impact of potential share repurchases has not been included in the company's fiscal 2011 diluted EPS guidance***.

30.     On March 25, 2010, the Company held a conference call for analysts and investors.  During the call, defendants discussed the Company's 4Q10 and reported FY 2010 financial results and the outlook for FY 2011.  The Company bragged about its reported FY 2010 results and emphasized that in FY 2010 the Company defied the experts who

- 9 -

predicted the slowing economy and rising unemployment would cause consumers to be more conservative.

31.    The Company also reiterated its FY 2011 revenue, earnings and margin forecasts, including a 1%-3% increase in comparable-store sales:

> [DUNN:]     [In] [c]alendar 2009 . . . [e]xperts said that rising unemployment would derail consumer spending . . . .
>
> . . . Most of these things did happen, but you know what? . . . Best Buy experienced significant year-over-year increases in unit volumes in each of the three major screens, notebooks, televisions and mobile phones.

32.    During the call, defendant Muehlbauer also discussed the Company's plan to use its cash to repurchase its common stock in the open market, noting specifically that its FY 2011 earnings forecast *did not* contemplate the impact of any stock repurchase on FY 2011 EPS:

> [W]hile I anticipate that we will return to the market to buy back shares, our earnings and EPS guidance for Fiscal 2011 does not reflect the impact of share repurchases.

33.    Investors were encouraged by the Company's 4Q10 and FY 2010 financial results and the comments concerning its FY 2011 forecasts, causing the stock price to climb from $41.18 per share on March 24, 2010, to $42.66 per share on March 25, 2010, on more than 30 million shares traded.

34.    On June 15, 2010, the Company reported its 1Q11 financial results in a press release. The Company reported EPS of $0.36, badly missing Wall Street 1Q11 consensus estimates of $0.50 per share. The Company also reported a weak comparable-store sales increase of only 1.9%, soaring SG&A expenses of $2.5 billion, an increase of 12% year over year, and an inventory increase of 10% year over year. The Company explained that it had

experienced some softness in key business categories, including gaming, music, movies and televisions. Defendants nevertheless assured investors that the back half of the year would be profitable and reaffirmed ***all aspects*** of their FY 2011 financial forecast, reportedly to be driven by top-line revenue growth and margin expansion:

> Best Buy Co., Inc., a leading retailer of consumer electronics, today reported net earnings of $155 million, or $0.36 per diluted share, for its fiscal first quarter ended May 29, 2010, compared with $153 million, or $0.36 per diluted share, for the prior-year period.
>
> \*      \*      \*
>
> The domestic segment's fiscal first quarter revenue totaled $7.9 billion, an increase of 5 percent versus the prior-year period. This increase was driven by the addition of net new stores and a comparable store sales gain of 1.9 percent. The comparable store sales gain was driven primarily by an increase in average ticket. The domestic segment experienced low double-digit comparable store sales increases in notebook computers, mobile phones and appliances. These gains were partially offset by comparable store sales decreases in gaming, music and movies. The company also noted that it experienced a low-single digit comparable store sales decline in televisions driven by a high single-digit increase in unit sales offset by moderating price declines.

35.     Notwithstanding reported sales declines in key product categories, the Company's press release stated that market share growth was continuing (100 basis points for the three months ended April 30, 2010) and reaffirmed sales revenue and earnings forecasts for FY 2011:

> "***We continue to expect solid top-line growth and expansion of our annual operating margin to approximately 5 percent of revenue in fiscal 2011.***"
>
> ***The company also reiterated its fiscal 2011 outlook and annual diluted EPS guidance as provided on March 25, 2010.***

36.     Following the June 15, 2010 press release, the Company held a conference call to discuss its 1Q11 financial results. During the call, defendants acknowledged that weak

1Q11 results were due to slower demand and slower traffic in U.S. stores, even though consumer spending had increased from calendar 2009:

> [DUNN:]   *[W]hile I'm neither pleased nor satisfied with our first-quarter financial results, it does not change my confidence that we can and will deliver our annual guidance and drive value for the long term.*
>
> \*        \*        \*
>
> [MUEHLBAUER:] While we saw slight comparable-store sales declines in some of our categories, like gaming and home theater, *our market share remained essentially in line with expectations.*
>
> \*        \*        \*
>
> *Finally, we continue to expect to deliver our financial goals for the year. We are maintaining our annual guidance expectations of strong EPS growth of 10% to 14% driven by top line growth and expansion of our operating margins.*
>
> \*        \*        \*
>
> *[W]e've not changed our guidance expectations for the top line either in total revenue growth or in comp sales.*

37.     During the call, and in light of the 1Q11 revenue and earnings miss and sales declines, analysts challenged the Company's basis for reaffirming its initial financial forecasts set in March 2010.  In particular, analysts inquired whether the Company believed that demand for Best Buy product offerings was so strong that notwithstanding the 1Q11 revenue miss, sales would accelerate enough later in the year to make up for the shortfall. Citing back orders in certain categories of products, defendants rejected the notion that sales may not be strong enough to meet forecasts set earlier in the year and reiterated the earnings forecast of $3.45 to $3.60 per share and comparable-store sales increases of 1%-3%:

> [ANALYST:] [J]ust to follow up on that, Mike, what signs are you seeing in terms of the slowing growth to give you confidence. . . ?

. . . [VITELLI:]  [B]ecause of the backorder situation you['ve] seen in some new categories, so you know the consumer demand is out there.

\*      \*      \*

[ANALYST:]  One more question on the guidance . . . in the first quarter, to be fair, your revenues did fall short of expectations. When you look at the guidance for the full year, is your confidence still in the $3.45 to $3.60 range predicated on recapturing those revenues, or do you think that SG&A spending may actually be lower than what was first anticipated? . . .

. . . [MUEHLBAUER:]  *[W]e've maintained all aspects of our guidance, so we still see the comp of 1% to 3% for the year. . . . [C]learly we expect to recoup that as we move through the year given the product cycles that we see coming . . . so no changes on that front. Correspondingly, same with the EPS guidance. Based on what we see today in Q1, $3.45 to $3.60 is still the best range we have for the year.*

\*      \*      \*

[ANALYST:]  I guess I still don't understand, all things being equal, how, given your performance in Q1 you could be more optimistic about the remainder of the year than where you were in March?

[MUEHLBAUER:]  We're getting more optimistic . . . .

. . . [ANALYST:]  [A]dmittedly, you fell short of your expectations in Q1, you're still backing guidance, which means that you have to exceed your original expectations in the remaining quarters, is that not a fair assumption?

[MUEHLBAUER:]  That is a fair, but if you look at the weight of the business, that's in Q1 versus previous quarters. Q1 was our smallest quar[ter] – it's 10% of our year. . . . So as I look at the opportunity to make up that in Q1, we have significant opportunity to make it up in Q2, Q3 and especially Q4.

38.    On June 30, 2010, the Company presented at the Oppenheimer & Co. Consumer, Gaming, Lodging & Leisure Conference ("Oppenheimer Conference"). The Oppenheimer Conference was hosted by Dave Deno ("Deno"), Best Buy's Senior Vice President of Finance and CFO, International, and Bill Seymour, Best Buys Vice President of

- 13 -

Investor Relations.  During the Oppenheimer Conference the Company again reiterated the

FY 2011 financial forecast, notwithstanding the known weakness in sales demand:

> [DENO:]  Let's talk about our 2011 fiscal guidance and overview. . . . *And you can see our sales growth, from nearly $50 billion to $53 billion. Comps will be somewhere between 1% and 3%, and we have in our plans operating margin expansion of 30 to 40 basis points*. . . .
>
> *If you look at our earnings per share growth, it's 10% to 14% over the year, $3.45 to $3.60, capital of about $850 million*. . . .
>
> *So our outlook for the year, even though our first quarter was a little bit weaker than we had hoped, is still unchanged. . . . So this is our guidance for the year, we are holding to it and expect to achieve these targets.*

## FRAUDULENT SCHEME AND FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

39.     On September 14, 2010, the Company issued its financial results for 2Q11 in a

press release.  The Company reported 2Q11 EPS of a whopping $0.60 per share, *well above*

Wall Street estimates of $0.40, and lower SG&A expenses.  However, the Company also

reported domestic comparable-store sales declines of 1.4%, acknowledged declines in TV

sales and a decline in market share in mobile computing and entertainment hardware and

software.  Weak sales also caused inventories to increase by 6%.  Presumably referring to

lower SG&A expenses and the positive earnings impact of stock repurchases, the Company

admitted that "while there are many moving pieces that we manage . . . our earnings are

essentially in line with our original expectations for the year as strong gross profit rates and

cost control plans work to offset softer top line growth."

40.     Simultaneously, the Company reduced its FY 2011 top-line revenue forecast

by $1 billion and reduced its forecasted comparable store sales forecast to growth of only

1%-2%.  The Company nevertheless bullishly *increased FY 2011 forecasted operating*

*income growth from 30-40 bps to 40-55 bps, and boosted its earnings forecast from $3.45-$3.60 to $3.55-$3.70 per share*, reportedly to reflect stock repurchases, which had already occurred in the first half, stating:

> **Best Buy's Second Quarter Diluted EPS Grows 62% Year-Over-Year to $0.60**
>
> Company Significantly Increased Operating Margin in the Quarter
>
> Company Completed Share Repurchases Totaling $700 Million During the First Fiscal Half
>
> Fiscal 2011 Diluted EPS Guidance Increased to $3.55 to $3.70
>
> *      *      *
>
> The Domestic segment's fiscal second quarter revenue totaled $8.4 billion, an increase of 2 percent versus the prior-year period. This increase was driven by the addition of net new stores, partially offset by a comparable store sales decline of 1 percent. *The comparable store sales results were driven primarily by a decline in customer traffic, partially offset by an increase in average ticket. . . . [L]ow-double digit comparable store sales decline in TVs was driven by a low double-digit decline in unit sales and moderating price declines*.
>
> *      *      *
>
> *[D]omestic market share declined 50 basis points versus the comparable period last year for the three months ended July 2010. . . . The company noted that it continues to expect to increase its market share for the full fiscal year*.

41.    The September 14, 2010 press release added that during 2Q11, Best Buy had repurchased $600 million worth of its stock compared to only $100 million in 1Q11. In a shift in the components of the FY 2011 earnings forecast, the Company attributed the $0.10 EPS increase in forecasted earnings to the impact of $700 million in share repurchases (20 million shares), which had occurred in the first half of the year. The Company expressly

- 15 -

disclaimed the impact of any second half share repurchase on the current, yet increased,

earnings forecast:

- Share repurchases totaled approximately $600 million in the second fiscal quarter (approximately $700 million in shares repurchased for the first fiscal half). . . .

- *Fiscal 2011 diluted* EPS *guidance increased by 10 cents to $3.55 to $3.70 to reflect impact of share repurchases completed in the first fiscal half (the new guidance range excludes the impact of potential share repurchases that may be completed in the second fiscal half).*

42.     On the same day, September 14, 2010, the Company hosted a conference call

for analysts and investors to discuss the 2Q11 financial results. The Company explained its

weak 2Q11 sales results, its reduced revenue expectations and the purported basis of its

increase in FY 2011 earnings prospects.     Defendants further assured investors that

notwithstanding sales declines, the Company was "*on track to deliver and exceed our*

*annual EPS guidance*":

> [MUEHLBAUER:]  Overall, revenue grew 3% to $11.3 billion, on comparable store sales that were essentially flat versus last year. *This revenue performance included domestic comparable store sales declines of 1.4%.* This decline was driven primarily by softness in customer traffic patterns that resulted in lower sales across categories such as home theater, entertainment hardware and software.
>
> *            *            *
>
> So looking at the results for the first half of fiscal 2011 . . . *we are pleased that our earnings are essentially in line with our original expectations for the year* . . . .
>
> *            *            *
>
> First, looking at revenue, given the softness experienced year-to-date, we have lowered our revenue expectations to approximately $52 billion. As a result, we now anticipate comp sales – comp store sales growth 1% to 2% for the full year . . . .

\*　　　\*　　　\*

[W]e now expect to deliver 40 to 55 basis points of operating income improvement versus last year. . . . In total, these assumptions along with the favorable impact of share repurchase activity completed in the first half, now lead us to an earnings per share *guidance range for the year of $3.55 to $3.70, an increase of 13% to 18% versus last year, and $0.10 higher than our original range*.

 . . . *Overall, we are pleased that we are on track to deliver and exceed our annual EPS guidance*.

43.     During the call, analysts questioned defendants as they had after the 1Q11

revenue and earnings miss, on the basis of their belief that top-line revenue in the second half

would significantly accelerate to support the Company's guidance.  In response, the

Company assured investors that customer demand for new products would drive revenue,

particularly during the holiday season, because customers "overindex their wallet share into

CE products," and that there was no reason that the 2010 holiday season would be any

different.  The Company added that while it knew that TV sales had been weak, promotions

in the holiday season would unlock "a lot of pent up demand:"

[ANALYST:]  Obviously the gross margin gains are very admirable and we applaud the move to buy back a significant amount of stock in the second quarter but, nevertheless, *the revenue guidance is lower than what you originally articulated, and you now you're looking for comps in the second half to be 1% to 3% in the wake of significantly more difficult compares. Jim, could you maybe just elaborate a little bit more on why you think the revenue line specifically is going to accelerate to a pretty significant extent in the back half of the year and in particular the holiday season?*

[MUEHLBAUER:]  Yes, thanks, Alan.

As we look at the back half of the year . . . [w]e know during the holiday season that customers over-index their wallet share into CE products. *We have no reason to believe this holiday season is going to be any different.* As a matter of fact what we have seen during several key drive times,

especially when we have new hot products, we have customer demand for those hot products.

*     *     *

[ANALYST:] I guess the question I have, as we went through the quarter, we got closer to the tradition family stronger football season, . . . did you see an improving trend there in the TV category, particularly with some of the new technologies now in the stores?

[VITELLI:] Generally, not. Generally, the overall TV industry has been relatively flat. I think that's partially as I said earlier, I think it's partially because the industry hasn't been very promotional in the first half.

*As Jim mentioned, we believe, in fact, we know that it's going to get more exciting promotionally in home theater in the second half. I think there's been a lot of pent-up demand, both from a consumer point of view and from a manufacturer and retailer point of view, to get some exciting promotions going and I think we're going to see more of that in the second half.*

44.     On September 15, 2010, BB&T issued a report on the Company's 2Q11 financial results, expressing their delight with the Company's increased FY 2011 earnings forecast and confidence that consumer spending would increase during the holiday season. The report reiterated defendants' aggressive earnings forecast as follows:

[D]iluted EPS jumped 62.2% to $0.60, beating our estimate and consensus by $0.14. Management raised its FY'10 diluted EPS guidance to $3.55-$3.70 from $3.45–$3.60 . . . .

*     *     *

- *Management believes consumer spending on electronics will pick up in H2'10, driven by a higher allocation of holiday spending on electronics; increased iPad availability; new motion-based video gaming platforms; new product introductions in tablet computing; and increased sales of e-readers.*

*     *     *

*We were impressed by Best Buy's much better-than-expected Q2'10 earnings and FY'10 guidance raise, which reaffirms our positive long-term outlook on the company.*

- 18 -

45.   After the Company's September 14, 2010 financial report and conference call, the Company's stock price increased from a close of $34.65 per share on September 13, 2010 to a close of $36.73 per share on September 14, 2010, on volume of more than 21 million shares traded. By September 27, 2010, Best Buy stock was trading above $40 per share.

46.   The true facts, which were known to defendants or deliberately disregarded, and which rendered the Company's financial forecasts without reasonable basis, are set forth below:

(a)   Demand for and sales of Best Buy consumer electronics product offerings were weak or declining and could not support the Company's aggressive FY 2011 sales, revenue and earnings forecast, nor its increased September 14, 2010 increased EPS forecast;

(b)   The Company's earnings forecast could not be achieved without substantial earnings management and, in particular, sharp reduction and curtailment of SG&A expenses and aggressive share repurchases which reduced the Company's outstanding shares and increasing reported earnings; and

(c)   Despite defendants' statements to the contrary, and because of weak sales demand known to defendants or deliberately disregarded as of September 14, 2010, the Company was not "on track to deliver and exceed [its] annual EPS guidance" of $3.70 per share.

47.     On November 26, 2010, the day after Thanksgiving (dubbed "Black Friday"),

Dunn was interviewed by *Bloomberg* on the topic of in store traffic and the Company's sales

promotion for the holiday season:

> *[T]raffic across the country, measured by the lines in front of our stores, is longer this year than last year, and the traffic to our website is greater this year than it was last year.*

*     *     *

> *[A]necdotally, the traffic reports we have from around the country are better than they were even two years ago.*

*     *     *

> [W]e're offering customers great prices . . . and *it's going to be great for our shareholders*.

48.     On and after November 26, 2010, Best Buy's stock continued to trade at levels

above $42 per share.

## THE TRUE FACTS AND FINANCIAL CONDITION
## OF THE COMPANY BEGIN TO BE DISCLOSED

49.     On December 14, 2010, the Company reported its 3Q11 financial results in a

press release.  The results shocked investors, as the Company reported that it had again

missed Wall Street analyst revenue and earnings expectations by a wide margin, domestic

comparable-store sales had declined, and the Company had lost market share.  Further,

notwithstanding the increased FY 2011 earnings forecast after the 2Q11 results, the

Company slashed its FY 2011 earnings forecast of $3.55-$3.70 per share by up to $0.50 to

$3.20-$3.40 per share – well below even the initial earnings forecasts of $3.45-$3.60 per

share set in March 2010.

50.    The Company additionally noted that in 3Q11 it had repurchased another 11 million shares of its stock at a cost of $420 million, bringing the total for the first three quarters of FY 2011 to 31 million shares. In addition, the Company stated that its new lower FY 2011 earnings expectations of $3.20-$3.40 per share *included* the positive impact of the share repurchases of $0.12 on fiscal year earnings estimates. Thus, but for 31 million shares repurchased in the first three quarters of FY 2011, earning expectations could be *as low as $3.08 per share*. The December 14, 2010 press release stated:

**Fiscal Third Quarter 2011 Summary**:

- Domestic segment's comparable store sales declined 5.0% . . .

- Domestic segment's gross profit rate up 90 basis points . . .

- Tight cost controls limited total company SG&A dollar growth to 1 percent year-over-year.

- Updated diluted EPS guidance range for fiscal 2011 of $3.20 to $3.40 (previous guidance range was $3.55 to $3.70), *driven primarily by lower domestic revenue expectations partially offset by continued improved gross margin rates and control over variable expenses*.

- Share repurchases totaled $420 million in the fiscal third quarter (approximately $1.1 billion in shares repurchased fiscal year-to-date).

Best Buy Co., Inc., the world's leading retailer of consumer electronics, today reported net earnings of $217 million, or $0.54 per diluted share, for its fiscal third quarter ended November 27, 2010, compared with $227 million, or $0.53 per diluted share, for the prior-year period.

\*       \*       \*

*The company estimates that its domestic market share declined 110 basis points . . . . The decline was driven primarily by declines in TVs, mobile computing and gaming software. Based on fiscal year-to-date trends, the company now estimates that its domestic market share will decline for the full fiscal year as compared to the prior fiscal year.*

\*       \*       \*

*"Based on lower than expected sales and earnings in the fiscal third quarter, and given our current visibility to potential outcomes in the fiscal fourth quarter, we now expect annual earnings to be below our previous fiscal 2011 EPS guidance. . . . However, our best view today is that we now expect annual EPS in the range of $3.20 to $3.40."*

51.    On December 14, 2010, the Company held a conference call for analysts and investors. The call was hosted by defendants Dunn, Muehlbauer and Vitelli. Defendants attempted to explain the earnings miss resulting from slow sales across the board, including those products defendants claimed would drive in store traffic, and the reduction in the FY 2011 earnings forecast, admitting that the Company's "top line growth assumptions earlier in the year turned out to be too aggressive":

[DUNN:] *Our sales in the US, however, were lower than we expected for the quarter.  And as a result, earnings were less than we anticipated.*

\*    \*    \*

*The newer technologies like 3D and IPTV, . . . have been slower to take hold. . . .*

*. . . The notebook market was weaker than we expected . . . .*

*The gaming sector lagged our expectations.*

\*    \*    \*

[MUEHLBAUER:] As you noticed in our release this morning, *the single largest driver of our softer-than-expected performance in the quarter was the comparable store sales decline in the domestic segment . . . .*

\*    \*    \*

*[O]ur top line growth assumptions earlier in the year turned out to be too aggressive based on the environment that we see for demand, specifically in the TV industry and the computing industry overall . . . .*

52.    The Company also announced that, in addition to an earnings miss and reduction in its FY 2011 earnings forecast, during the quarter the Company repurchased

another 11 million shares of its common stock, bringing the total for the year to 31 million shares, which would have a $0.12 impact on the Company's FY 2011 earnings results.

53.     Defendants' December 14, 2010 disclosures shocked investors and sent the Company's stock price plummeting 14% on massive volume (more than 64 million shares), from a closing price of $41.70 per share on December 13, 2010 to $35.52 per share on December 14, 2010.

54.     On December 15, 2010, BB&T Capital Markets issued a report discussing the Company's earnings miss and FY 2011 forecast reduction.   The report particularly questioned why Company executives, knowing in 2Q11 that television and PC sales were slowing, decided to raise the fiscal year forecast:

BBY: NOT MUCH TO LIKE ABOUT Q3 "MISS AND LOWER."

- **Best Buy reports worse-than-expected Q3'10 results, lowers FY'10 guidance**.   Revenue declined 1.1% to $11.9B and diluted EPS increased 1.9% to $0.54, missing our estimate and consensus by $0.10 and $0.07, respectively. Management lowered its FY'10 EPS guidance to $3.20–$3.40 from $3.55–$3.70.

                    *        *        *

- *Q3 "miss and lower" surprising given recent guidance raise. We believe Best Buy's earnings miss and guidance reduction were all the more disappointing given the fact management had a "free pass" to reduce guidance going into the Q2 earnings release amid widespread reports of slowing television and PC sales, and instead raised its FY'10 forecast.*

                    *        *        *

In addition, Q3 marks the second time this year Best Buy has come up short of consensus estimates and is the latest of a number of earnings misses over the last few years.   *We believe these periodic earnings disappointments negatively impact management's credibility with investors* . . . .

- 23 -

55.     The market for Best Buy common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, Best Buy common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Best Buy common stock relying upon the integrity of the market price of Best Buy common stock and market information relating to Best Buy, and have been damaged thereby.

56.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Best Buy common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

57.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Best Buy's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of Best Buy and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially

- 24 -

inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of Best Buy stock was removed and the price of Best Buy stock declined dramatically, causing losses to plaintiff and the other members of the Class.

## ADDITIONAL SCIENTER ALLEGATIONS

58.    As alleged herein, Best Buy and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, these defendants, by virtue of their receipt of information reflecting the true facts regarding Best Buy, their control over, and/or receipt and/or modification of Best Buy's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Best Buy, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION/ECONOMIC LOSS

59.    During the Class Period, as detailed herein, defendants made false and misleading statements about Best Buy's business and prospects and engaged in a scheme to deceive the market. This artificially inflated Best Buy's stock price and operated as a fraud

or deceit on the Class. Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the market, Best Buy's stock price fell precipitously, as the prior artificial inflation came out of the stock price over time. As a result of their purchases of Best Buy common stock during the Class period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

60.     Best Buy's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor. 15 U.S.C. §78u-5(b)(2)(A).

61.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Best Buy who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF
## RELIANCE: FRAUD ON THE MARKET

62.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    The omissions and misrepresentations were material;

(c)    The Company's stock traded in an efficient market;

(d)    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)    Plaintiff and other members of the Class purchased Best Buy common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

63.    At all relevant times, the market for Best Buy common stock was efficient for the following reasons, among others:

(a)    As a regulated issuer, Best Buy filed periodic public reports with the SEC; and

(b)    Best Buy regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

64.     Plaintiff incorporates ¶¶1-63 by reference.

65.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Best Buy common stock during the Class Period.

67.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Best Buy common stock. Plaintiff and the Class would not have purchased Best Buy common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

68.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Best Buy common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

69.    Plaintiff incorporates ¶¶1-68 by reference.

70.    The Individual Defendants acted as controlling persons of Best Buy within the meaning of §20 of the 1934 Act.  By virtue of their positions and their power to control public statements about Best Buy, the Individual Defendants had the power and ability to control the actions of Best Buy and its employees.  Best Buy controlled the Individual Defendants and its other officers and employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or acquired Best Buy common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their family members, directors and officers of Best Buy and their families and affiliates.

72.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Best Buy has more than 394 million shares of stock outstanding, owned by thousands of persons.

73.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the 1934 Act was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the price of Best Buy common stock was artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

74.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

75.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.     Awarding plaintiff and the members of the Class damages and interest;

C.     Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just

and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February    , 2011          HEAD, SEIFERT & VANDER WEIDE

                                                      VERNON J. VANDER WEIDE (No. 112173)
                                                      333 South Seventh Street, Suite 1140
                                                      Minneapolis, Minnesota 55402
                                                      Telephone: 612-339-1617, ext. 21
                                                      Facsimile: 612-339-3372

                                                      ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
                                                      DARREN J. ROBBINS
                                                      DAVID C. WALTON
                                                      655 West Broadway, Suite 1900
                                                      San Diego, CA 92101
                                                      Telephone: 619/231-1058
                                                      619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

MARINO & CONROY LLC
STEVEN F. MARINO
301 Wharton Street
Philadelphia, PA 19147
Telephone: 215/462-3200
215/462-4763 (fax)

Attorneys for Plaintiff