## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IBEW Local 98 Pension Fund,
Marian Haynes, and Rene LeBlanc,
individually and on behalf of all others
similarly situated,

              Plaintiffs,

v.

Best Buy Co., Inc.; Brian J. Dunn;
Jim Muehlbauer; and Mike Vitelli,

              Defendants.

Civil No. 11-429 (DWF/FLN)

**MEMORANDUM
OPINION AND ORDER**

---

Clayton D. Halunen, Esq., Halunen & Associates; Shawn J. Wanta, Esq., Baillon Thome
Jozwiak & Wanta LLP; Daniel J. Pfefferbaum, Esq., and Shawn A. Williams, Esq.,
Robbins Geller Rudman & Dowd LLP; and Vernon J. Vander Weide, Esq., Lockridge
Grindal Nauen PLLP, counsel for Plaintiffs IBEW Local 98 Pension Fund and Marion
Haynes, Lead Plaintiff.

Clayton D. Halunen, Esq., Halunen & Associates; Shawn J. Wanta, Esq., Baillon Thome
Jozwiak & Wanta LLP; D. Seamus Kaskela, Esq., and David M. Promisloff, Esq.,
Barroway Topaz Kessler Meltzer & Check, LLP; and Garrett D. Blanchfield, Jr., Esq.,
Reinhardt Wendorf & Blanchfield, counsel for Plaintiff Rene LeBlanc, individually and
on behalf of all others similarly situated.

Amelia N. Jadoo, Esq., David W. Beehler, Esq., Michael V. Ciresi, Esq., and Sara A.
Poulos, Esq., Robins Kaplan Miller & Ciresi LLP, counsel for Defendants

---

### INTRODUCTION

    This matter is before the Court on a Motion to Dismiss First Amended Complaint

brought by Defendants Best Buy Co., Inc. ("Best Buy" or the "Company"), Brain J. Dunn

("Dunn"), Jim Muehlbauer ("Muehlbauer"), and Mike Vitelli ("Vitelli") (Doc. No. 65).

For the reasons set forth below, the Court grants the motion in part and denies the motion

in part.

## BACKGROUND

This action is a securities class action brought by Plaintiffs on behalf of all persons

who purchased or otherwise acquired the common stock of Best Buy between the dates of

September 14, 2010 and December 13, 2010 (the "Class Period"), against Defendants, for

violations of the Securities Exchange Act of 1934 ("SEC Act").  By Order dated

March 20, 2012 (the "March 2012 Order"), the Court granted Defendants' Motion to

Dismiss Plaintiffs' Amended Complaint.  (Doc. No. 41.)  Judgment was entered on

March 21, 2012.  (Doc. No. 42.)  By Order dated October 22, 2012, the Court vacated the

judgment in this case and granted Plaintiffs leave to file their First Amended Complaint.

(Doc. No. 60.)  Plaintiffs filed their First Amended Class Action Complaint for Violation

of the Federal Securities Laws ("FAC") on October 29, 2012.  (Doc. No. 61 ("FAC").)

Defendants now move to dismiss the FAC.

The facts of this case were set forth in the Court's March 2012 Order, and the

Court will summarize and supplement the relevant facts below.  Best Buy is a leading

retailer of consumer electronics in the United States, headquartered in Richfield,

Minnesota.  (*Id*. ¶ 2.)  At all relevant times during the Class Period, Defendant Dunn was

CEO of Best Buy, Defendant Muehlbauer was the Executive Vice President, and

Defendant Vitelli was Enterprise Executive Vice President and President of Best Buy for the Americas.  (*Id.* ¶¶ 26-28.)[1]

Lead Plaintiff Marion Haynes ("Haynes") purchased Best Buy stock during the Class Period.  (*Id.* ¶ 23.)[2]  Plaintiff IBEW Local 98 Pension Fund ("IBEW") also purchased or acquired Best Buy common stock.  (*Id.* ¶ 24.)

On March 25, 2010, Best Buy reported positive fourth quarter 2010 and fiscal year 2010 ("FY10") financial results and issued fiscal year 2011 ("FY11") revenue guidance:  revenues of $52 to $53 billion, same store sales[3] growth of 1% to 3%, and earnings per share ("EPS") of $3.45 to $3.60.  (*Id.* ¶¶ 3, 38-40.)  At that time, Best Buy stated that it would engage in share repurchases during FY11, but insisted that its EPS forecast was independent of the impact of share repurchases.  (*Id.* ¶ 3.)  Plaintiffs allege that investors were encouraged by Best Buy's FY10 financial results and Defendants' forecast for FY11; the Company's stock price increased from $41.18 on March 24, 2010 to $42.66 on March 25, 2010.  (*Id.*)  However, first quarter 2011 ("1Q11") results missed Wall Street expectations:  same store sales growth was lower than projected, and sales in gaming, music, movies, and televisions declined.  (*Id.* ¶¶ 4, 49-51.)  Selling, General

---

[1]     Dunn, Muehlbauer, and Vitelli are collectively referred to as "Individual Defendants."

[2]     Haynes was appointed Lead Plaintiff in this litigation by the Court's Order of June 7, 2011.  (Doc. No. 18.)

[3]     "Same store sales" is a measure of revenue at stores, call centers, and websites operating for at least fourteen full months as well as revenue related to other comparable store sales channels.  (FAC ¶ 3 n.1.)

& Administrative Expenses ("SG&A") increased 12% year-over-year, and inventories increased 10% year-over-year.  (*Id.* ¶ 49.)  Despite the disappointing 1Q11, Best Buy reiterated its FY11 forecasts in its 1Q11 press release and later investor conference call. (*Id.* ¶¶ 50-53.)  In the Company's June 15, 2010 press release, Best Buy stated that market share growth was continuing and assured investors that the remainder of FY11 would be more profitable—in particular, in the fourth quarter.  (*Id.* ¶ 51.)  Explaining how the Company would make up for disappointing results in 1Q11, Defendants dismissed the 1Q11 results as "just 10% of our year," and said "we have significant opportunity to make it up in Q2, Q3, and especially Q4."  (*Id.* ¶¶ 4, 55.)  Plaintiffs allege that, during the Class Period, Defendants explained that they would manipulate certain "levers" to achieve the Company's forecast, including repurchasing outstanding shares.  (*Id.* ¶¶ 33-35.)  The Company repurchased $110 million in shares in 1Q11 and $600 million in 2Q11.  (*Id.* ¶¶ 5, 135-137.)

On September 14, 2010, the Company reported:  a decline of 0.1% in comparable store sales growth; lower sales across home theater, and entertainment hardware and software; decreased traffic in stores; and its first decline in market share in eighteen quarters.  (*Id.* ¶ 6.)  As a result, Defendants reduced the FY11 revenue forecast by $1 million.  (*Id.*)  The Company announced a $0.20 EPS increase over 2Q11 Wall Street EPS expectations, and increased EPS guidance to $3.55–$3.70.  (*Id.*)  Defendants attributed this increase to $700 million worth of share repurchases, despite previous representations that share repurchases would not impact the Company's forecasts.  (*Id.*)

Defendants Dunn, Muehlbauer, and Vitelli held a conference call on September 14, 2010, during which Defendant Muehlbauer stated that "our earnings are essentially in line with our original expectations for the year" and that "[o]verall, we are pleased that we are on track to deliver and exceed our annual EPS guidance." (*Id.* ¶¶ 7, 72.)  When asked by analysts on the conference call to explain how "the revenue line specifically [could] accelerate to a pretty significant necessary extent" to make the EPS guidance projections, Defendants stated:  "We know during the holiday season that customers over-index their wallet share into CE [consumer electronic] products.  We have no reason to believe this holiday season is going to be any different."  (*Id.* ¶ 76.) After the conference call, the Company's stock price increased from $34.65 on September 13, 2010 to $36.73 on September 14, 2010.  (*Id.* ¶ 8.)  By September 27, 2010, Best Buy stock was trading above $40 a share.  (*Id.*)

Plaintiffs allege that by September 14, 2010, Defendants knew of multiple significant indicators that the Company was not in fact "on track" to achieve its FY11 targets, but was actually off pace, and that Defendants made statements concerning Best Buy's financial state that were knowingly false or made with no reasonable basis in fact. (*Id.* ¶¶ 9-13, 97-100.)  For example, Plaintiffs allege that Defendants knew that the 2Q11 EPS increase over Wall Street expectations was illusory and driven by manipulation of "levers" such as share repurchases, rather than substantive growth in sales, traffic, or margins.  (*Id.* ¶¶ 12, 90-91.)  In addition, Plaintiffs allege that Defendants knew that: (1) comparable store sales missed expectations in 1Q11 and turned negative in 2Q11; (2) store traffic had "been choppy"; (3) declines in comparable store sales were driven by

a decline in customer traffic patterns; (4) the Company reported its first decline in market share in eighteen quarters on September 14, 2010; (5) sales in gaming and televisions were declining; and (6) domestic inventory levels in categories such as televisions were up.  (*Id.* ¶¶ 9-11.)  Plaintiffs further allege that, despite all these known facts, Defendants reassured investors that earnings were "in line with . . . original expectations" and that the Company was "on track" to make its new increased FY11 guidance of $3.55 to $3.70.  (*Id.* ¶¶ 7, 66, 72.)

On November 24, 2010, two days before Black Friday, Defendant Vitelli stated that entry-level flat screen television sales were "going really strong."  (*Id.* ¶¶ 14, 105, 106.)  Plaintiffs allege that, in fact, sales were declining and that Defendants had access to data that showed—and knew—that sales were declining.  (*Id.* ¶¶ 15, 108-09.)

On December 14, 2010, the Company reported 3Q11 EPS of just $0.54, falling short of 3Q11 estimates.  (*Id.* ¶¶ 16, 114.)  The Company also reported a decline in comparable store sales of 5%, and a decline in market share of 110 basis points, with more losses to come.  (*Id.* ¶¶ 16, 114.)  At that time, Defendants reduced FY11 EPS guidance to $3.20–$3.40.  (*Id.* ¶¶ 16, 115.)  Defendants did not wait for the results of 4Q11 holiday sales to reduce the EPS guidance.  (*Id.* ¶ 17.)  Plaintiffs allege that Defendants stopped their share buybacks on Black Friday and did not make further purchases at the lower prices.  (*Id.* ¶ 142.)

On December 14, 2010, Defendants Dunn, Muehlbauer, and Vitelli hosted a conference call, during which they explained the earnings report, claiming that it was a result of lower-than-expected sales in notebooks, gaming, and 3DTV.  (*Id.* ¶ 18.)

Defendants also explained that they had failed to be "sufficiently promotional" in televisions.  (*Id.* ¶ 117.)  Defendants admitted that their "top line growth assumptions earlier in the year turned out to be too aggressive based on the environment that we see for demand, specifically in the TV industry, and the computing industry overall."  (*Id.* ¶ 116.)

Plaintiffs further allege that when Best Buy's true financial condition and revenue and earnings prospects for FY11 were revealed, investors transacted more than 64 million Best Buy shares.  (*Id.* ¶ 20.)  Best Buy stock declined from $41.70 per share on December 13, 2010 to $35.52 per share on December 14, 2010, a 14% decline.  (*Id.* ¶¶ 20, 120.)

In this action, Plaintiffs argue that Defendants made false and misleading statements concerning the Company's financial status and revenue and earnings prospects for FY11, devising a scheme to deceive investors and the market about the Company's true financial condition.  (*Id.* ¶ 148.)  Plaintiffs assert that these false and misleading statements had the intended effect of, and caused Best Buy's stock to, trade at artificially inflated prices throughout the Class Period, reaching a high of $45.63 on November 23, 2010.  (Id. ¶ 149.)  When Best Buy's stock fell after the true state of its financial condition became known, Plaintiffs allege that Lead Plaintiff Haynes and other members of the class suffered considerable economic damages under the federal securities laws. (*Id.*)

In their FAC, Plaintiffs assert two causes of action:  (1) Violation of Section 10(b) of the 1934 Act and Rule 10b-5; and (2) Violation of Section 20(a) of the 1934 Act.  (*Id.*

¶¶ 185-191.)  Plaintiffs' claims are based on four allegedly fraudulent statements.  The

first three statements were made on September 14, 2010 relating to Best Buy's 2011

fiscal year projections:  (1) Best Buy's FY 2011 EPS guidance of $3.55-$3.70 per share;

(2) that Best Buy was "on track to deliver and exceed [the] annual EPS guidance"; and

(3) that Best Buy's earnings were "essentially in line with [Best Buy's] original

expectations for the year."  (*Id.* ¶ 66.)  The fourth statement was Vitelli's November 24,

2010 statement regarding television sales; particularly that:  "Flat-screens are doing well

at different levels . . . .  We are doing really well at Magnolia at the high end with 3-D.

And the entry-level pieces are going really strong."  (FAC ¶ 105.)

Defendants move once again to dismiss Plaintiffs' claims.  Specifically,

Defendants argue that Plaintiffs' FAC contains no new allegations to support their fraud

claims.  (Doc. No. 66 at 1.)  Similar to their arguments in support of their first motion to

dismiss, Defendants contend that the September 14, 2010 statements are all

forward-looking statements, and are thus subject to the Private Securities Litigation

Reform Act's ("PSLRA") safe harbor, and further that the statements were accompanied

by meaningful cautionary language.  (*Id.*)  Defendants also contend that Vitelli's

November 24, 2010 statement was immaterial puffery and has not been shown to be

materially false.  (*Id.* at 2.)  The Court considers Defendants' motion below.

## DISCUSSION

## I.      **Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all

facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In addition to these general pleading standards, the PSLRA imposes a heightened pleading standard in cases alleging securities fraud. *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010). Under the PSLRA, complaints in a securities fraud action must "specify each statement alleged to have been misleading, the reason or reasons why the

statement is misleading," and must "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind" (the "scienter

requirement").  15 U.S.C. § 78u-4(b)(1), (2); *see also Tellabs, Inc. v. Makor Issues*

*& Rights, Ltd.*, 551 U.S. 308, 321 (2007).  One purpose of the PSLRA was to "put an end

to the practice of pleading fraud by hindsight."  *Elam v. Neidorff*, 544 F.3d 921, 927 (8th

Cir. 2008).  But the heightened pleading standard does not amount to an obligation on

securities fraud plaintiffs to ultimately prove their allegations, as that "is an altogether

different question" from adequately pleading securities fraud.  *Matrixx Initiatives, Inc. v.*

*Siracusano*, 131 S. Ct. 1309, 1325 (2011).

**II.      Defendants' Motion to Dismiss**

    **A.      Section 10(b) of the SEC Act and SEC Rule 10b-5**

Plaintiffs allege that Defendants violated the anti-fraud provisions of Section 10(b)

of the SEC Act and SEC Rule 10b-5.  Section 10(b) of the SEC Act makes it "unlawful

for any person, directly or indirectly . . . [t]o use or employ, in connection with the

purchase or sale of any security . . . any manipulative or deceptive device or contrivance

in contravention of" SEC rules.  15 U.S.C. § 78j(b).  SEC Rule 10b-5 states that it is:

> unlawful for any person, directly or indirectly, by the use of any means or
> instrumentality of interstate commerce . . . [t]o employ any device, scheme,
> or artifice to defraud, [t]o make any untrue statement of a material fact or to
> omit to state a material fact necessary in order to make the statements
> made, in light of the circumstances under which they were made, not
> misleading, or [t]o engage in any act, practice, or course of business which
> operates or would operate as a fraud or deceit upon any person, in
> connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(a)-(c).  A plaintiff asserting liability under Section 10(b) and/or

Rule 10b–5 must satisfactorily allege:  "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1028 (8th Cir. 2011) (quotation omitted).

The PSLRA contains a "safe harbor" exception, which states that in any private action that is based on an untrue statement of material fact or omission of a material fact, a defendant will not be liable for making a "forward-looking statement" that is: (1) "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement"; (2) immaterial; or (3) made without actual knowledge that the statement was false or misleading.  15 U.S.C. § 78u-5(c)(1)-(2).

### B.   September 14, 2010 Statements

The Court first considers the allegedly false and misleading statements made on September 14, 2010.

#### 1.   *September 14, 2010 FY11 Financial Forecast*

Plaintiffs allege that Defendants' September 14, 2010 increase of "FY 2011 diluted EPS guidance . . . to $3.55-$3.70" was false and misleading.  (FAC ¶ 66(a).) Specifically, Plaintiffs allege that this statement, while forward-looking, lacked a reasonable basis and is therefore false.  Plaintiffs contend that the forecast of $3.55-$3.70

lacked a reasonable basis when made because of continued and accelerated negative trends (in both specific product categories like televisions and laptops and company-wide in same store sales and market share), and because key metrics were both negative and known to Defendants.  These metrics include:  (1) decline in market share (*id*. ¶¶ 68); (2) accelerating domestic comparable store sales declines (*id*. ¶¶ 49, 69, 71); (3) declining in-store traffic (*id*. ¶¶ 52, 71); (4) decline in sales of TVs, games, music and movies (*id*. ¶¶ 52, 69); (5) reduced sales outlook by TV vendors (*id*. ¶ 98); (6) increasing inventory (*id*. ¶¶ 57, 74); (7) failed or disappointing sales events (*id*. ¶¶ 57, 61); (8) one-time sales drivers that would not be repeated; and (9) declining growth in revenue (*id*. ¶¶ 42, 68, 71, 76).  Plaintiffs allege that even though Defendants were aware of these "overwhelming negative" facts and reduced the FY 2011 revenue forecast, they increased FY 2011 EPS guidance.  In addition, the FAC alleges that at least one analyst report at *Seeking Alpha* described Best Buy's forecast as "irrational exuberance" concerning Best Buy's performance forecast over the second half of the year.  (*Id*. ¶¶ 82-83.)

There is no dispute that the increase of "FY 2011 diluted EPS guidance . . . to $3.55-$3.70" was forward-looking.[4]  (*Id*. ¶ 66(a) & Ex. 13 at 5.)  The PSLRA's safe harbor provision provides that forward-looking statements cannot form the basis for liability if accompanied by meaningful cautionary statements.  15 U.S.C. § 78u-5(c)(1)-

---

[4]      Forward-looking statements include "projections of revenues, income (including income loss), earnings (including earnings loss) per share," "a statement of the plans and objectives of management for future operations," "a statement of future economic performance," and "any statement of the assumptions underlying or relating to" any of the statements described above.  15 U.S.C. § 78u-5(i)(1).

(2).  Further, when forecasts, opinions, or projections are accompanied by meaningful cautionary statements, the "bespeaks caution" doctrine states that forward-looking statements may not form the basis of a securities fraud claim if those statements did not affect the "total mix" of information provided to investors.  *Parnes v. Gateway 2000*, 122 F.3d 539, 548 (8th Cir. 1997) (citation omitted).

Defendants argue that the cautionary language that accompanied this statement brought the statement within the protection of the safe harbor provision.  First, Defendants point to Best Buy's September 14, 2010 Form 8-K press release, which contained a paragraph entitled "Forward-Looking and Cautionary Statements":

> This news release contains forward-looking statements within the meaning of the [PLSRA] . . . that reflect management's current views and estimates regarding future market conditions, company performance and financial results, business prospects, new strategies, the competitive environment and other events . . . .  These statements involve a number of risks and uncertainties that could cause actual results to differ materially from the potential results discussed in the forward-looking statements. Among the factors that could cause actual results and outcomes to differ materially from those contained in such forward-looking statements are the following:  general economic conditions, changes in consumer preferences, credit market constraints, acquisitions and development of new businesses, divestitures, product availability, sales volumes, pricing actions and promotional activities of competitors, profit margins, weather, changes in law or regulations, foreign currency fluctuation, availability of suitable real estate locations, the company's ability to react to a disaster recovery situation, the impact of labor markets and new product introductions on overall profitability, failure to achieve anticipated benefits of announced transactions and integration challenges relating to new ventures.  A further list and description of these risks, uncertainties and other matters can be found in the company's annual report and other reports . . . including, but not limited to, Best Buy's Annual Report on Form 10-K . . . .

(FAC, Ex. 13 at 5.)

The Annual Report on Form 10-K, in turn, states:

> [C]ertain risks that our management believes are applicable to our business
> and the industry in which we operate.  There may be additional risks that
> are not presently material or known.  You should carefully consider each of
> the following risks and all other information set forth in this Annual Report
> on Form 10-K.

(FAC, Ex. 7 at 12.)  In the Report, Defendants describe risks, including:  economic

conditions in the U.S. and key international markets; a decline in consumer discretionary

spending; changing consumer preferences; failure to attract, develop and retain qualified

employees; competition from other retailers, internet businesses, vendors, and other

forms of retail commerce; failure to control costs; effects on liquidity by constraints on

capital markets; changes in credit ratings affecting access to capital markets and

increasing borrowing costs; the success of Best Buy's strategies; risks associated with

entering new markets; statutory, regulatory, and legal developments.  (*Id*. at 12-18.)

Significantly, the Report indicates that the guidance was "highly dependent on the cash

flows and net earnings [it] generate[s] during [its] fourth fiscal quarter, which includes

the majority of the holiday selling season."  (*Id*. at 18.)  In addition, the September 14,

2011 analyst call began with a warning about forward-looking statements:

> Second, I'd like to remind you that comments made by me, or by others
> representing Best Buy, may contain forward looking statements, which are
> subject to risks and uncertainties.  Our SEC filings contain additional
> information about factors that could cause actual results to differ from
> management's expectations. . . .

(FAC, Ex. 15 at 2.)

　　　To be meaningful, cautionary statements must be "substantive and tailored to the

specific future projections, estimates or opinions" being challenged.  *See Slayton v. Am.*

*Express Co.*, 604 F.3d 758, 772 (2d Cir. 2010) (citation omitted).  Here, Best Buy

lowered its FY11 annual guidance on December 14, 2010, noting that third-quarter sales and earnings fell short of expectations.  (FAC, Ex. 29 at 3.)  Brian Dunn explained that Best Buy's forecasts were "looking for an improvement in the TV industry in the third quarter, supported by a more promotional environment and pent-up consumer demand for new technologies" but that the TV market was down in the third quarter "driven by a weaker overall demand environment for TV, along with slower adoption of new technologies."  (*Id*.)  Dunn also noted a weaker than expected notebook market, driven by a number of factors, including:  a more significant launch of Windows 7 than the industry forecasted; two shifts in the "tablet space"—customers migrating to tablets and customers waiting as they considered purchase decisions on tablets versus netbooks and notebooks.  (*Id*. at 4.)  Dunn also noted that the "gaming sector lagged" behind expectations, and Best Buy's loss of market share and completion with large discounters.  (*Id*. at 4, 7.)  Best Buy indicated that its inability to see into the remainder of the holiday season, as of the December 14 lowering of its guidance, was a factor in lowering its guidance.  (FAC, Ex. 27 at 4; FAC, Ex. 29 at 6.)  In fact, during the December 14 phone call, Muehlbauer noted that "[o]ne of the inherent challenges of having a fiscal quarter that ends right after the Thanksgiving holiday is that we are right in the middle of the holiday selling season and only have partial visibility to customer behaviors."  (FAC, Ex. 29 at 6.)

Upon review, the Court concludes that the cautionary statements that accompanied the forward-looking projected increase of "FY 2011 diluted EPS guidance . . . to $3.55-$3.70" are sufficient to bring Defendants' statements under the safe harbor provision of the PSLRA.  In particular, the risk factors explained in the cautionary

statements (namely, those related to being able to predict changing customer preferences,

Best Buy's ability to successfully introduce new technologies, and competition Best Buy

faced with large discounters) mirror Best Buy's failures in accurately predicting demand

and consumer preferences that precipitated the lowering of its forecast.  Accordingly,

they are protected by the safe harbor provision.

> 2. *September 14, 2010 Statements:  "We are on track to deliver and exceed our annual EPS guidance [of $3.55 to $3.70]"; and "[O]ur earnings are essentially in line with our expectations for the year."*

Also on September 14, 2010, Defendants made the following statements:  (1) "We

are on track to deliver and exceed our annual EPS guidance [of $3.55 to $3.70]; and

(2) "[O]ur earnings are essentially in line with our expectations for the year."  (FAC

¶ 66.)  The parties dispute whether these two statements are forward-looking.

Defendants contend that statements that use identical or similar language ( e.g.,

"on track" and "in line") have been protected in the same way that that other

forward-looking language is protected because such statements simply confirm the

company's comfort with the projection that it is issuing and act as an affirmation of the

projected guidance.[5]  In support, Defendants assert that in the case of mixed

present/future statements, if the present portion cannot be separated from the projection,

then the whole statement is treated as forward-looking.  *See, e.g., In re Aetna, Inc. Sec.*

---

[5]      And as such, Defendants submit that the statements were accompanied by the same meaningful cautionary language discussed above.

*Litig.*, 617 F.3d 272, 275, 280, 282 (3d Cir. 2010) (holding alleged misleading statements were vague and indistinguishable from future projection).

Plaintiffs, on the other hand, contend that Best Buy's September 14, 2010 statements that the Company was currently "on track to deliver and exceed our annual EPS guidance" and that the Company's earnings were "essentially in line" with expectations were *not* forward-looking statements subject to the protection of the PSLRA statutory safe harbor, but rather statements of current facts reflecting upon Best Buy's current position and historical performance up to that point in the fiscal year.  In support of their position, Plaintiffs cite to what they assert are the more well-reasoned cases concluding that such "on track" statements can be actionable as statements of present condition.  *See, e.g.*, *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) ("The element of prediction in saying that sales are 'still going strong' does not entitle Tellabs to a safe harbor with regard to the statement's representation concerning current sales."); *In re Secure Computing Corp. Sec. Litig.*, 120 F. Supp. 2d 810, 818 (N.D. Cal. 2000); *Silverman v. Motorola, Inc.*, Civ. No. 07-4507, 2008 WL 4360648, at *10-11 (N.D. Ill. Sept. 23, 2008).

Here, Plaintiffs allege that the falsehoods relate to the non-forward looking aspect of the statement.  In particular, Plaintiffs allege that Best Buy's "on track" and "in-line" statements were materially false because, as of September 14, 2010, Best Buy had confirmed how far off-track it was, namely that its same store sales had decelerated (FAC ¶ 87(a)-(b)); the Company had experienced consecutive quarters of TV and gaming sales declines (*id.* ¶ 87(c)-(d)); inventory had increased (*id.* ¶ 87(e)); reported market share had

17

declined (*id.* ¶¶ 69, 91); and the FY11 revenue forecast was reduced by a billion dollars (*id.* ¶ 72).

After carefully reviewing the case law and the arguments set forth by the parties, the Court concludes that Best Buy's statements claiming that it was "on track to meet or exceed our annual guidance" and that "earnings are essentially in line with our original expectations for the year" are not forward-looking and are, therefore, actionable as a statement of present condition.  Consequently, they are not subject to the PSLRA's safe harbor provision.

As explained above, a plaintiff asserting liability under Section 10(b) and/or Rule 10b–5 must satisfactorily allege scienter.  *Minneapolis Firefighter Relief Ass'n*, 641 F.3d at 1028.  Because these statements are not subject to the safe harbor provisions, for which the required level of scienter is "actual knowledge," the statements are subject to liability upon a showing of "knowing falsity or recklessness."  *Institutional Investors Group v. Avaya*, 564 F.3d 242, 274 (D. N.J. 2009).  Scienter may be shown through:  (1) facts demonstrating a conscious intent to deceive, manipulate or defraud; (2) allegations of severe recklessness; or (3) allegations of motive and opportunity coupled with knowledge of recklessness.  *In re K-Tel Int'l Sec. Litig.*, 300 F.3d 881, 893-94 (8th Cir. 2002).  "A complaint adequately pleads scienter under the PSLRA 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the fact alleged.'"  *Matrixx Initiatives, Inc.*, 131 S. Ct. at 1324.

Plaintiffs allege that Best Buy's "on track" and "in-line" statements were materially false.  For example, the FAC alleges that as of September 14, 2012, Defendants knew that Best Buy was not currently "on track" to make and beat the new EPS forecast based on the following facts:  (1) Best Buy's comparable store sales had been well-below expectations; (2) Best Buy's in-store traffic had been declining; (3) Best Buy's comparable store sales of televisions had been declining; (4) Best Buy's comparable store sales of gaming products have been declining; (5) Best Buy's inventories were growing because of slow sales; (6) revenue growth had underperformed in 1Q11 and 2Q11; and (7) to reach its forecasts, Best Buy would have to achieve dramatically accelerated sales growth.  (FAC ¶ 87.)  Moreover, Plaintiffs allege that Best Buy had reported market share decline.  (*Id*. ¶¶ 69, 91.)  Despite knowing of accelerating negative trends, Plaintiffs assert Best Buy made the false statements that "earning are essentially in line with our original expectations for the year" and that it was "on track to deliver and exceed" the guidance.  In addition, Plaintiffs assert that Best Buy was reckless in making the "on track" and "in line" statements, so as to satisfy the scienter element.  In particular, Plaintiffs allege that Defendants knew the information, as discussed above, which rendered their "on track" statements false.  *See, e.g.*, *In re St. Jude Med., Inc. Secs. Litig.*, 836 F. Supp. 2d 878, 896 (D. Minn. 2011) (noting one "classic" fact pattern giving rise to strong inference of scienter where defendants made statements when they knew or had access to information suggesting them to be materially inaccurate).

Based on a thorough review of the record, and consideration of the parties' arguments, the Court concludes that Plaintiffs' allegations that Defendants made the "on track" and "in line" statements despite known negative trends are sufficient to satisfy the pleading requirements of the PSLRA.[6]  In particular, the allegations of scienter as a whole give rise to an inference that Defendants acted with the required state of mind that is at least as compelling as any opposing inference of non-culpable conduct.  Thus, Plaintiffs' claims with respect to these statements are sufficiently pled so as to survive Defendants' motion to dismiss.[7]

### C.      Vitelli's November 24, 2010 Statement

On November 24, 2010, Defendant Vitelli was interviewed by Neil Cavuto of Fox News, during which Defendant Vitelli stated that customers were already lining up at Best Buy stores, and that television sales were "going really strong."  The exchange consisted of the following:

CAVUTO:  *How are flat-screens doing?*

VITELLI: Flat-screens are doing well at different levels . . . .  We are doing really well at Magnolia at the high end with 3-D.  *And the entry-level pieces are going really strong*.

---

[6]     The Court acknowledges that this is a departure from the Court's earlier ruling in the March 2012 Order.  However, after a thorough review of the record, the parties' arguments, and the allegations in the FAC, the Court concludes that today's ruling is consistent with the law and facts presented, and that Plaintiffs' allegations as to these statements are sufficient to state a claim.

[7]     Defendants do not challenge Plaintiffs' allegations as to economic loss and causation.

(FAC ¶ 105 & Ex. 24 at 2 (emphasis added).)  Plaintiffs argue that Vitelli's comments

regarding TV sales were false and material.  Specifically, Plaintiffs allege that only two

weeks later, Defendants revealed that sales of flat screens had not been doing well, and

that Defendants later admitted that they saw declines in entry-level TV sales in

November 2010.  Plaintiffs further allege that Vitelli's false statement was material to

investors.  Defendants maintain that Vitelli's statements regarding television sales are not

actionable securities fraud because they are immaterial, and because Plaintiffs have not

alleged that what Vitelli stated was false.

A company's statement is material if there is "'a substantial likelihood that the

disclosure of [an] omitted fact would have been viewed by the reasonable investor as

having significantly altered the total mix of information available.'"  *Parnes*, 122 F.3d at

546 (quotation omitted).  While materiality can be a question of fact for the jury, there are

reasons why a court may decide the issue of materiality as a matter of law—for example,

when statements are "so vague and such obvious hyperbole" that no "reasonable investor

would rely upon them."  *Id*. at 547.  The Court concludes, as it did in its March 2012

Order, that Vitelli's statements are not material so as to be actionable under Section 10(b)

of the SEC Act.  Vitelli's November 24, 2010 interview was given before the Black

Friday weekend and is hyperbole.  Consistent with the determination in the March 2012

Order, the Court concludes that this statement cannot form a basis for liability under

federal securities laws.

**D.      Section 20(a) of the SEC Act**

Plaintiffs argue that Defendants are liable under Section 20(a) of the SEC Act, which establishes joint and several liability for "[e]very person who, directly or indirectly, controls any person liable" for violations of the securities laws, "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."  15 U.S.C. § 78t.

A claim under Section 20(a) for control person liability is derivative of a primary claim, and therefore the failure to satisfactorily plead a Section 10(b)/Rule 10b-5 claim also precludes a Section 20(a) claim.  *See, e.g., Luntsgraaf*, 619 F.3d at 873.  Plaintiffs allege that the Individual Defendants acted as controlling persons of Best Buy within the meaning of Section 20(a), and that, "by virtue of their positions and their power to control public statements about Best Buy," they had the power and ability to control the actions of Best Buy and its employees.  (FAC ¶ 191.)  Plaintiffs also argue that Best Buy controlled the Individual Defendants and its other officers and employees.  (*Id.*)

Defendants' opposition to the Section 20(a) claim is based on the purported failure of Plaintiffs' Section 10(b) claims.  Therefore, because the Court concluded that Plaintiffs' Section 10(b) and Rule 10(b)-5 claims fail as a matter of law with respect to the Company's FY11 earnings guidance and Vitelli's November 24, 2010 statement, the Court also dismisses Plaintiffs' Section 20(a) claim for failure to state a claim as to those statements.  However, because the Court has concluded that Plaintiffs' claims with respect to the Company's "on track" and "in line" statements are sufficiently pled, Plaintiffs' Section 20(a) allegations as to those statements are also sufficiently pled.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss First Amended Complaint (Doc. No. [65]) is **GRANTED IN PART** and **DENIED IN PART** consistent with the memorandum above.


Dated:  August 5, 2013                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge