# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IBEW Local 98 Pension Fund,
Marian Haynes, and Rene LeBlanc,
individually and on behalf of all others
similarly situated,

     Plaintiffs,

v.

Best Buy Co., Inc.; Brian J. Dunn;
Jim Muehlbauer; and Mike Vitelli,

     Defendants.

Civil No. 11-429 (DWF/FLN)

**MEMORANDUM
OPINION AND ORDER**

---

Clayton D. Halunen, Esq., Halunen & Associates; Shawn J. Wanta, Esq., Baillon Thome Jozwiak & Wanta LLP; Aelish M. Baig, Esq., Kenneth J. Black, Esq., Daniel J. Pfefferbaum, Esq., and Shawn A. Williams, Esq., Robbins Geller Rudman & Dowd LLP; and Vernon J. Vander Weide, Esq., Lockridge Grindal Nauen PLLP, counsel for Plaintiffs IBEW Local 98 Pension Fund and Marion Haynes, Lead Plaintiff.

Clayton D. Halunen, Esq., Halunen & Associates; Shawn J. Wanta, Esq., Baillon Thome Jozwiak & Wanta LLP; D. Seamus Kaskela, Esq., and David M. Promisloff, Esq., Barroway Topaz Kessler Meltzer & Check, LLP; and Garrett D. Blanchfield, Jr., Esq., Reinhardt Wendorf & Blanchfield, counsel for Plaintiff Rene LeBlanc, individually and on behalf of all others similarly situated.

Hillel I. Parness, Esq., Amy S. Slusser, Esq., Barr M. Landy, Esq., David W. Beehler, Esq., Michael V. Ciresi, Esq., Nicole S. Frank, Esq., Patricia Furlong, Esq., Sara A. Poulos, Esq., and Stephen P. Safranski, Esq., Robins Kaplan Miller & Ciresi LLP, counsel for Defendants

---

**INTRODUCTION**

This matter is before the Court on a Motion for Judgment on the Pleadings and

Motion to Strike Pursuant to Rules 12(c) and 12(f) brought by Defendants Best Buy Co.,

Inc. ("Best Buy" or the "Company"), Brian J. Dunn ("Dunn"), Jim Muehlbauer

("Muehlbauer"), and Mike Vitelli ("Vitelli") (collectively, "Defendants").  (Doc.

No. 104.)  For the reasons set forth below, the Court grants in part and denies in part the

motions.

**BACKGROUND**

This action is a securities class action brought by Plaintiffs on behalf of all persons

who purchased or otherwise acquired the common stock of Best Buy between the dates of

September 14, 2010 and December 13, 2010 (the "Class Period"), against Defendants, for

violations of the Securities Exchange Act of 1934 (the "1934 Act").  The facts of this

case are fully set forth in the Court's previous orders.  Therefore the Court will only

summarize and supplement the relevant facts below.

In February 2011, Plaintiffs filed this action.  (Doc. No. 1 ("Compl.").)  On

October 29, 2012, Plaintiffs filed their First Amended Class Action Complaint, asserting

two causes of action:  (1) Violation of Section 10(b) of the 1934 Act and Rule 10b-5; and

(2) Violation of Section 20(a) of the 1934 Act.  (Doc. No. 61 ("FAC") ¶¶ 185-91.)[1]

Plaintiffs' claims are based on four allegedly fraudulent statements.  The first three

statements relate to Best Buy's 2011 fiscal year projections and include statements:

(1) regarding Best Buy's FY 2011 EPS guidance of $3.55-$3.70 per share; (2) that Best

Buy was "on track to deliver and exceed [the] annual EPS guidance"; and (3) that Best

Buy's earnings were "essentially in line with [Best Buy's] original expectations for the

year."  (*Id*. ¶ 66.)  The fourth statement was made by Vitelli on November 24, 2010

regarding television sales, particularly that:  "Flat-screens are doing well at different

levels . . . .  We are doing really well at Magnolia at the high end with 3-D.  And the

entry-level pieces are going really strong."  (*Id*. ¶ 105.)

By Order dated August 5, 2013, the Court partially granted Defendants' Motion to

Dismiss Plaintiffs' FAC.  (Doc. No. 78.)  Specifically, the Court found two of the

allegedly fraudulent statements were not actionable—the first and fourth statements.

(*Id*. at 15-21.)  The Court concluded that the second and third statements (the "on track"

and "in line" statements) were not "forward-looking" statements subject to the Private

Securities Litigation Reform Act's ("PSLRA") safe harbor,  and that the statements were

sufficiently pled so as to survive Defendants' motion to dismiss.  (*Id*.)  The second and

third statements were made by Muehlbauer on September 14, 2010, during an investor

conference call that included Dunn, Muehlbauer, and Vitelli.  (FAC ¶¶ 7, 72.)

---

[1]     Prior to filing the FAC, the Court granted Defendants' motion to dismiss all claims
of the complaint with prejudice and entered judgment.  (Doc. Nos. 41, 42.)  The Court
later vacated judgment and granted Plaintiffs leave to file their FAC.  (Doc. No. 60.)

Defendants now move for judgment on the pleadings as to Plaintiffs' claims against Vitelli and to strike certain allegations in the FAC.

## DISCUSSION

### I.    Judgment on the Pleadings

A party may move for judgment on the pleadings at any point after the close of pleadings, but early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c). The Court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Rule 12(b)(6). *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott*, 901 F.2d at 1488. A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 550 U.S. 544, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Defendants argue that Vitelli is entitled to judgment on the pleadings.  In particular, Defendants maintain that the Court's August 5, 2013 Order forecloses a claim against Vitelli as a primary violator under Section 10(b), and that Plaintiffs' allegations fail to meet the Eighth Circuit's test for control-person liability under Section 20(a).  Plaintiffs, however, maintain that they have sufficiently alleged that Vitelli is liable both as a primary violator and a control person under the 1934 Act.

### A.      Primary Violator

In the FAC, Plaintiffs allege that on November 24, 2010, Vitelli made the following allegedly fraudulent statement regarding television sales:  "Flat-screens are doing well at different levels. . . .  We are doing really well at Magnolia at the high end with 3-D.  And the entry-level pieces are going really strong."  (FAC ¶ 105.)  In the August 5, 2013 Order, the Court concluded, with respect to this statement:

> . . . Vitelli's statements are not material so as to be actionable under
> Section 10(b) of the SEC Act.  Vitelli's November 24, 2010 interview was
> given before the Black Friday weekend and it is hyperbole.  Consistent with
> the determination in the March 2012 Order, the Court concludes that this
> statement cannot form a basis for liability under federal securities law.

(Doc. No. 78 at 21.)

Despite the Court's ruling with respect to Vitelli's statements, Plaintiffs contend that they have sufficiently alleged that Vitelli is a primary violator based on "Vitelli's ubiquitous participation in Best Buy's actionable statements of September 14, 2010." (Doc. No. 114 at 2.)  In support, Plaintiffs contend that while Vitelli did not make the actionable statements, he could be liable as a primary violator because he substantially participated in the preparation of the allegedly fraudulent statements and contributed to their production and dissemination.  (*See* FAC ¶¶ 7-9, 13, 71-76, 87, 108, 117.)  Plaintiffs also contend that Vitelli's silence during Muehlbauer's statements can support primary liability.  Specifically, Plaintiffs claim that Vitelli, who led Best Buy's retail operations in the Americas,[2] was part of a small executive team that made representations to analysts and investors and actively participated in the September 14, 2010 phone conference. Plaintiffs also assert that during the phone conference, Vitelli supported Muehlbauer's assertions.

In support, Plaintiffs rely on several cases from outside this District.  *See, e.g.*, *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827 (N.D. Iowa 2009); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001).  These cases generally provide that to establish primary liability under Section 10(b) for the false statement of others, one must allege

---

[2]     At all relevant times, Vitelli was Enterprise Executive Vice President and President of Best Buy for the Americas.  (FAC ¶ 28.)

"substantial participation" or "intricate involvement" in the preparation of fraudulent statements. *Reese*, 643 F.3d at 693 n.8; *see also Armstrong*, 678 F. Supp. 2d at 860 (denying motion to dismiss where plaintiff alleged that the defendant assisted in the preparation of allegedly misleading statements); *Scholastic*, 252 F.3d at 76 (noting that a vice president for finance and investor relations was "involved in the drafting, producing, reviewing and/or disseminating of the false and misleading statements").

The Court has reviewed the allegations in the FAC and concludes that Plaintiffs have not sufficiently put forth facts to support a claim of primary liability against Vitelli based on the remaining actionable statements—the "on-track" and "in-line" statements. These statements were made by Muehlbauer during the September 14, 2010 conference call. While Plaintiffs make general allegations regarding Vitelli's participation in the phone conference and his statements on behalf of Best Buy, there are no specific factual allegations that would show any "substantial participation" or "intricate involvement" by Vitelli in the preparation of the "on-track" and "in-line" statements. In particular, there are no facts that would show that Vitelli drafted, reviewed, or otherwise participated in the creation of the content of the actionable statements made by Muehlbauer.[3] For the above reasons, the Court concludes that Plaintiffs have failed to allege facts sufficient to

---

[3]     Plaintiffs allege generally that Vitelli participated in the drafting, preparation, and/or approval of various reports and communications (*see* FAC ¶ 31), but this allegation is insufficient to tie Vitelli to the "on-track" and "in-line" statements.

support a claim against Vitelli as a primary violator.[4]  The Court therefore dismisses the claim against Vitelli as a primary violator.  The Court does so, however, without prejudice.  Should facts come to light during discovery that could support a claim against Vitelli as a primary violator, the Court will entertain a motion to amend the FAC.

### B.    Control Person Liability

Plaintiffs also contend that they have sufficiently alleged that Vitelli is liable as a control person under Section 20(a).  Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable" under Section 10(b) and Rule 10(b)-5 "shall also be liable jointly and severally with and to the same extent as such controlled person is liable."  15 U.S.C. § 78t(a).  To establish control person liability under Section 20(a), Plaintiffs must allege that:  (1) a "primary violator" violated the federal securities laws; (2) "the alleged control person actually exercised control over the general operations of the primary violator"; and (3) "the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated."  *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (citing *Farley v. Henson*, 11 F.2d 827, 836 (8th Cir. 1993)).

---

[4]       In addition, the Court concludes that the FAC simply does not allege facts to support liability based on Vitelli's alleged silence.  The FAC alleges that Vitelli was liable for his November 2010 statement.  The Court has since concluded that the November 2010 statement is not actionable.  Plaintiffs now assert that Vitelli may be a primary violator based on his silence in the face of Muehlbauer's statements.  However, aside from conclusory allegations that Vitelli made "knowingly false misleading representations and omissions," the allegations in the FAC do not support a claim based on Vitelli's alleged silence.

Control person liability is to be liberally construed, requiring "only some indirect means of discipline or influence short of actual direction." *Id*. at 873-74.  Whether an individual is a control person is "an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Cummings v. Paramount Partners, LP*, 715 F. Supp. 2d 880, 907 (D. Minn. 2010) (citation omitted).  Moreover, Section 20(a) is not subject to the heightened pleading standards of the PLSRA or Rule 9(b). *Id*. (citation omitted).

Plaintiffs contend that they have alleged sufficient facts to demonstrate that Vitelli exercised substantial control over the operations and communications of Best Buy, and that Vitelli possessed and exercised power to influence Muehlbauer's September 14, 2010 statements.  Specifically, Plaintiffs allege that by virtue of his position as Enterprise Executive Vice President and President of the Americas, Vitelli had the power and ability to substantially control the actions of Best Buy and its employees.  (FAC ¶¶ 28, 190-91.)  Plaintiffs further allege that the individual defendants, including Vitelli:

> participated in the drafting, preparation, and/or approval of various public, shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom . . .  [and]

> because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.

(*Id.* ¶¶ 31-32.)  Plaintiffs further allege that Vitelli made numerous other public comments on behalf of Best Buy that demonstrate his actual exercise of control.  (*See, e.g.*, *id.* ¶¶ 14, 45, 52, 54, 71, 106-09, 111, 116-17.)  Finally, Plaintiffs assert that Vitelli was intimately involved in Best Buy's day-to-day operations as a managing executive and as a purveyor of public information about Best Buy's business and sales, particularly with respect to televisions.

Considering that control person liability is to be liberally construed, the Court concludes that Plaintiffs' allegations of control person liability as to Vitelli satisfy the pleading standards applicable to Section 20(a).  While Plaintiffs' allegations may not survive under the stringent standards of the PLSRA or Rule 9(b), they adequately allege that Vitelli exercised control over the general operations of Best Buy and that Vitelli possessed the power to control the September 14, 2010 representations.   The Court notes that control person liability requires "only some indirect means of discipline or influence short of actual direction."  *Lustgraaf*, 619 F.3d at 873-74.  Here, Plaintiffs have sufficiently alleged that Vitelli, as the Executive Vice President and President of the Americas, could have influenced the content of Muehlbauer's September 14, 2010 statements.[5]

For the above reasons, the Court denies Defendants' motion to dismiss with respect to Plaintiffs' claim against Vitelli as a control person.

---

[5]     The Court notes that "[c]ulpable participation by the alleged control person in the primary violation is not part of a plaintiff's prima facie case."  *Lustgraaf*, 619 F.3d at 873-74.

### C.     Motion to Strike

Finally, Defendants move to strike certain allegations from the FAC.  The allegations Defendants seek to strike include:  (1) those pleaded in support of the claim against Vitelli for his November 24, 2010 comments; (2) Paragraphs 110 through 113 of the FAC describing Dunn's and Vitelli's statements made on Black Friday; and (3) Paragraphs 26(a) and (b) relating to Dunn's departure from best Buy.

Rule 12(f) provides that the Court may, on its own or on motion made by a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. R. 12(f).  A district court enjoys "liberal discretion" under this rule.  *Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).  Striking a party's pleadings, however, "is an extreme measure," and motions to strike under Rule 12(f) "are viewed with disfavor and infrequently granted." *Id*.

The Court, in its discretion, declines to strike the above portions of the FAC.  This case is still in its early stages and Defendants have not met their burden to justify the use of this "extreme measure."  Instead, the Court finds that most of these issues will be more appropriately raised at a later stage of the litigation, such as through motions in limine.

**ORDER**

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings and Motion to Strike Pursuant to Rules 12(c) and 12(f) (Doc. No. [104]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.      Defendants' motion with respect to Plaintiffs' claim against Vitelli as a primary violator is **GRANTED** and that claim is **DISMISSED WITHOUT PREJUDICE**;

2.      Defendants' motion with respect to Plaintiffs' claim against Vitelli as a control person is **DENIED**; and

3.      Defendants' motion to strike pursuant to Rule 12(f) is **DENIED**.


Dated:  April 30, 2014                        s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge