IBEW Local 98 Pension Fund, et al.,                    Civil No. 11-429 (DWF/FLN)

                        Plaintiffs,

        v.                                                    **ORDER**

Best Buy Co., Inc., et al.,

                        Defendants.
_____

Daniel Pfefferbaum, Kenny Black, and Mack Reid, for Lead Plaintiff.
Joseph McLaughlin, for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Lead Plaintiff's motions for leave to file a second amended class complaint for violations of federal securities law (ECF No. 284), and motion to compel (ECF No. 213). For the reasons set forth below, Lead Plaintiff's motion for leave to file a second amended class complaint (ECF No. 284) is **DENIED**, and his motion to compel (ECF No. 213) is **DENIED without prejudice**.

**A.      Background**

**1.      Best Buy's 2010 Statements**

This protracted securities litigation stems from a dispute over the impact that a series of Defendant Best Buy Company Incorporated's ("Best Buy") late 2010 public statements had on the valuation of, and demand for, its publicly traded stock shares. At the heart of the dispute is Lead Plaintiff's allegation that Best Buy knew that its late 2010 statements were false and were issued with the fraudulent intent of galvanizing investor interest and confidence in its stock value at a time when its sales, revenues, and market share were in perceptible decline.

Best Buy is a Minnesota based retailer, focusing its product line and services, primarily, on a range of consumer electronics. On September 14, 2010, at around 8:00 a.m., Best Buy issued a

press release regarding its forecasted financial performance, market position, and product line sales revenue for the second fiscal quarter of 2011. *See* ECF No. 282 at 2. Specifically, the press release reported "a decline of 0.1% in comparable store sales growth; lower sales across home theater, and entertainment hardware and software; decreased traffic in stores; and its first decline in market share in eighteen quarters." ECF No. 200 at 2–3. Despite the tepid substance of the forecast, the 8:00 a.m. press release announced that Best Buy was increasing its earnings-per-share guidance by ten cents. *See id.* Best Buy's common stock, which closed the day before at $34.65, opened the morning of September 14, 2010, at $37.25 per share, a 7.5% increase. *See* ECF No. 240 at 3.

On that same day, at around 10:00 a.m., Best Buy held a conference call, in which its Chief Financial Officer ("CFO"), Jim Muehlbauer issued a more favorable statement regarding its expected financial prospects and market share for the second fiscal quarter in 2011. *See id.* Muehlbauer stated that "Best Buy [was] on track to deliver and exceed [the] annual [earnings-per-share] . . . guidance and . . . that Best Buy's earnings [were] essentially in line with [its] original expectations for the year and offered further earnings-per-share guidance." ECF No. 200 at 3. Best Buy's stock closed trading that day at $36.73 per share. *See* ECF No. 240 at 3.

Throughout November of 2010, Best Buy's stock value continued to rise, trading at a high point of $45.63 per share on November 23, 2010. *See* ECF No. 41 at 8. On November 24, 2010, two days before Black Friday, Mike Vitelli, Best Buy's Enterprise Executive Vice President and President for the Americas claimed in an interview with Neil Cavuto of Fox News that Best Buy's flat-screen television sales were "going really strong" and intimated that customer demand for this product was high. ECF No. 78 at 20. On the morning of Black Friday, November 26, 2010, Best Buy's Chief Executive Officer ("CEO"), Brian Dunn stated that Best Buy "estimat[ed] about an 8 percent increase in our [store] traffic . . . . The crowds are terrific . . . people are absolutely spending

money." ECF No. 41 at 6. Later that day, "[i]n another interview . . . with Bloomberg's Erik Schatzker's Inside Track, . . . Dunn stated that based on the activity he had seen thus far at Best Buy stores, people are absolutely spending money. The registers have been going nonstop since we opened the doors." ECF No. 61 at 56. On December 13, 2010, Best Buy's stock value had stabilized at $41.70 per share. *See* ECF No. 41 at 7.

Despite the optimism of the Black Friday statements, beginning in mid December 2010, Best Buy's public statements reported marginal or poor sales performance. *See* ECF No. 78 at 20. On December 14, 2010, Best Buy issued a press release reporting declining sales revenues for its third fiscal quarter of 2010. *See id.* at 6. In addition, during the same December 14, 2010, press release, Best Buy reduced its previous earning-per-share guidance. *See id.* Later that day, Muehlbauer explained that Best Buy's sales revenues were lower than expected in the third fiscal quarter of 2010, and by the day's end on December 14, 2010, Best Buy's stock value had dropped to $35.52 per share, a 14% decline. *See id.* at 7.

2.    **Procedural Posture**

On February 18, 2011, this action was initiated on behalf of Best Buy common stock purchasers between September 14, 2010, and December 13, 2010 ("Class Period"). *See generally* ECF No. 1. Throughout this case, Plaintiffs have asserted that both Best Buy's 8:00 a.m. press release and 10:00 a.m. conference call on September 14, 2010, were false and misleading statements and issued with the intended effect of causing Best Buy's stock to trade at artificially inflated prices throughout the Class Period. *See generally* ECF No. 25. Plaintiffs have also maintained that, as to the Black Friday related November 24, 2010, Fox News interview, Best Buy knew that its flat-screen television sales were declining long before the interview was given, and that Vitelli's false statement was material to investors. *See generally id.* "Plaintiffs . . . allege that when Best Buy's

true financial condition and revenue and earnings prospects for FY11 were revealed, investors transacted more than 64 million Best Buy shares." ECF No. 78 at 7.

On June 7, 2011, Marion Haynes was appointed Lead Plaintiff, and this Court consolidated several related actions against Best Buy into this action pursuant to Federal Rule of Civil Procedure 42(a). *See* ECF No. 18. On July 22, 2011, Plaintiffs filed an Amended Consolidated Class Complaint, raising two counts under § 10(b), Rule 10b-5, and § 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t. *See* ECF No. 25.

On March 20, 2012, the District Court dismissed Plaintiffs' Amended Consolidated Class Complaint with prejudice, and denied Plaintiffs' motion for leave to file a proposed first amended class complaint. *See generally* ECF No. 41. The District Court concluded that Best Buy's September 14, 2010, statements, both the 8:00 a.m. press release and 10:00 a.m. conference call, included sufficient cautionary language to immunize those statements from securities liability under the Private Securities Litigation Reform Act's ("PSLRA") Safe Harbor provision, 15 U.S.C. § 78u-5c.[1] *See generally id.* Central to the District Court's Order was its reasoning that although "[Best Buy's] predictions of future growth turned out to be wrong, [that] however, does not by itself render [Best Buy's] projections fraudulent." *Id.* at 17. Regarding the November 24, 2010, Fox News interview

---

1    The PSLRA imposes a heightened pleading standard in securities fraud cases. *See Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010). Under the PSLRA, a pleaded securities fraud allegation must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required [scienter]." 15 U.S.C. § 78u-4(b)(1), (2); *see also Tellabs, Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 321 (2007). The PLSRA Safe Harbor provision precludes a finding of liability under Rule 10-b5 for any forward looking statement that is: (1) supported by cautionary language; (2) immaterial; or (3) not shown by the plaintiff to be made with actual knowledge of the falsehood. *See Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 254 (3d Cir. 2009); *see also* ECF No. 240 at 4 n.2.

and Black Friday related statements, the District Court concluded that "when considered along with [Best Buy's] cautionary statements, the alleged misrepresentations are simply forward-looking statements concerning Best-Buy's estimated future economic performance, and [were] immaterial statements. Forward-looking statements of this nature and immaterial statements are not actionable under the SEC Act . . . ." *Id.* at 16. In addition, the District Court opined that "Dunn's statements on November 26, 2010 concerned sales at one of Best Buy's stores, . . . [and] were not intended as a blanket statement on [Best Buy's behalf]" and Vitelli's "November 24, 2010[, Fox News] interview was given before the Black Friday weekend, and [was, therefore, mereley] anecdotal in nature . . . ." *Id.* As to the request for leave to amend, the District Court concluded that given "the amount of time Plaintiffs took to complete their Amended Complaint, as well as the large number of amended allegations, [it] cannot envision a set of facts or circumstances wherein a second amended complaint could survive a motion to dismiss." *Id.* at 19.

On October 22, 2012, the District Court, pursuant to Federal Rule of Civil Procedure 59(e), vacated judgement and granted Plaintiffs' motion for leave to file their proposed first amended class complaint pursuant to Federal Rule of Civil Procedure 15(a). *See* ECF No. 60. The District Court concluded that the "First Amended Class Action Complaint . . . clarifies which [of Best Buy's] statements are alleged to be false[,] . . . why the statements were false and material, provides additional characterizations as to why [Best Buy's] purported risk warnings were not sufficient to justify [S]afe [H]arbor protection, and alleges . . . facts unknown [when] the Consolidated Complaint was filed." *Id.* at 6. On October 29, 2012, Plaintiffs filed their First Amended Class Complaint, again raising two counts under § 10(b), Rule 10b-5, and § 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t, based again on the September 14, 2010, 8:00 a.m. press release and 10:00 a.m. conference call, Vitelli's November 24, 2010, Fox News interview, and other related Black Friday

statements. *See generally* ECF No. 61.

On August 5, 2013, the District Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), again dismissed Plaintiffs' claims related to the September 14, 2010, 8:00 a.m. press release, because it concluded that the statement was forward looking and supported by sufficient cautionary language, rendering it eligible for PLSRA Safe Harbor protection. *See* ECF No. 78 at 18. Conversely, the District Court concluded that Plaintiffs' claims related to the September 14, 2010, 10:00 a.m. conference call were not protected by the PLSRA Safe Harbor and did not dismiss those claims. *See id.* at 20. As to the Black Friday statements, the District Court held that they were immaterial and protected by the PSLRA Safe Harbor provision because "Vitelli's November 24, 2010 [Fox News] interview was given before the Black Friday weekend and is hyperbole . . . [and] cannot form a basis for liability under federal securities laws." *Id.* at 22.

On September 13, 2013, the parties filed a joint report pursuant to Federal Rule of Civil Procedure 26(f) for the remaining claims related to the September 14, 2010, 10:00 a.m. conference call. *See* ECF No. 95. Shortly thereafter, on September 25, 2013, this Court entered the Scheduling Order, which provided that motions to amend the pleadings must be filed by December 1, 2013, discovery must be completed by January 1, 2015, all non-dispositive motions must be filed by June 1, 2015, and all dispositive motions must be filed by August 1, 2015. *See* ECF No. 102 at 1–2.

On January 31, 2014, Plaintiffs moved to certify the class on the remaining claims relating to the September 14, 2010, 10:00 a.m. conference call. *See* ECF No. 126. On August 6, 2014, the District Court, pursuant to Federal Rule of Civil Procedure 23, certified the class on those claims. *See* ECF No. 200 at 18. The District Court acknowledged "that the question of [class] certification in this action was difficult and involved evolving and novel issues of law that were material to the Court's decision" and concluded that class certification "will prevent further, duplicative litigation

6

of the relevant claims and will serve to conserve the resources of the Court and the parties by permitting the issues to be litigated in an economical fashion." *Id.*

On September 4, 2014, Plaintiffs filed the instant motion to compel Best Buy to "reverse the indiscriminate and improper designation of documents highly confidential and to search for and produce documents from personal e-mail text messages." ECF No. 213. The instant motion to compel was noticed for a September 29, 2014, hearing date. *See* ECF No. 214. However, on September 11, 2014, before Best Buy was required to respond to the instant motion to compel, and before a hearing could be held, the District Court provisionally stayed the case because Best Buy had petitioned the Eighth Circuit to review the District Court's class certification Order on the remaining September 14, 2010, 10:00 a.m. conference call claims. *See* ECF No. 223. The District Court reasoned that a provisional stay was warranted pending the Eighth Circuit's decision of whether to review the class certification Order because "there [was] a good chance the Eighth Circuit will grant [Best Buy's] petition for permission to appeal . . . class certification" given that "[Best Buy's] petition . . . raises legal issues regarding *Halliburton II* that have not yet been addressed by the Eighth Circuit." *Id.* at 4. On September 24, 2014, the Eighth Circuit granted Best Buy's petition to appeal the District Court's class certification Order. *See* ECF Nos. 226, 227. On October 22, 2014, the District Court indefinitely stayed the case, "pending appeal" and the Eighth Circuit's resolution of the class certification issue on the remaining September 14, 2010, 10:00 a.m. conference call claims. ECF No. 235 at 3; *see also* ECF No. 286 at 14.

On April 12, 2016, the Eighth Circuit Court reversed the District Court's grant of class certification on the claims relating to the remaining September 14, 2010, 10:00 a.m. conference call claims and remanded the case for further proceedings. *See generally* ECF No. 240; *see also* ECF No. 246. The Eighth Circuit found that "[Best Buy presented] strong evidence . . . that the economic

substance of the non-fraudulent press release statements and the alleged misrepresentations in the immediately following conference call [were] virtually the same, and that the two would have been expected to be interpreted similarly by investors[,]" which "showed that the forward-looking [earnings per share] guidance in the press release had an immediate impact on [Best Buy's] market price, whereas the confirming statements in the conference call two hours later had no additional price impact." ECF No. 240 at 11. On June 1, 2016, the Eighth Circuit denied Plaintiffs' Petition for an *en banc* rehearing, rendering its reversal of the District Court's class certification Order as final. *See* ECF No. 244.

On June 30, 2016, the District Court directed the parties to submit proposals regarding: "(1) the current status of the case; and (2) how best to proceed going forward." ECF No. 246. On July 7, 2016, Lead Plaintiff requested a brief delay in responding in order to weigh his "options . . . on how best to proceed going forward[, and requested that a] case management conference be set for a date after the petition for certiorari deadline" to appeal the issue of class certification on the remaining September 14, 2010, 10:00 a.m. conference call claims to the United States Supreme Court. ECF No. 250. On July 8, 2016, Best Buy responded that it believed "it would be prudent to continue the stay of the . . . trial court proceedings until [L]ead Plaintiff advises the Court and [it] that he will not file a petition, or until the [United States] Supreme Court disposes of any petition filed" seeking review of the Eighth Circuit's ruling on the issue of class certification. ECF No. 251.

On October 13, 2016, Lead Plaintiff notified the District Court that he would not be filing a petition for *certiorari* on the issue of class certification on the remaining September 14, 2010, conference call claims to the Untied States Supreme Court. *See* ECF No. 256. On October 27, 2016, Lead Plaintiff represented that he intended to move the case "forward as a class action not inconsistent with" United States Supreme Court and Eighth Circuit precedent. ECF No. 258. On

November 4, 2016, the District Court scheduled a case management conference for January 6, 2017. *See* ECF No. 259.

At the January 6, 2017, case management conference, as a basis to move the case forward, the parties discussed the need for briefing on Lead Plaintiff's request for leave to file a motion to once again certify the class on the remaining September 14, 2010, 10:00 a.m. conference call claims. *See* ECF No. 266 at 9, 35, 36. Lead Plaintiff maintained that briefing on the issue of class certification was not needed because the "cases that [he] . . . cited to this Court from Judge Kyle clearly state that the renewed motion for class certification is appropriate when there is new evidence or new developments" notwithstanding the Eighth Circuit's reversal. *Id.* at 36. The viability of Lead Plaintiff's First Amended Class Complaint or his desire to amend his First Amended Class Complaint were not raised by Lead Plaintiff nor discussed by the parties or the District Court at the January 6, 2017, case management conference. *See generally id.*

On January 20, 2017, Lead Plaintiff formally moved for leave to file a new motion for class certification on the remaining September 14, 2010, conference call claims. *See* ECF No. 267. Lead Plaintiff's request to revisit the issue of class certification was based on his desire to proffer new "evidence that the September 14[, 2010, 10:00 a.m.] conference call had a price impact by artificially maintaining the inflated stock price." *Id.* at 5. On June 23, 2017, the District Court denied Lead Plaintiff's request for leave to file a new motion for class certification. *See* ECF No. 282. In denying, the District Court reasoned, *inter alia*, that because the "Eighth Circuit concluded that the alleged misstatements on the conference call did not have a price impact[,]" Lead Plaintiff would "have to proceed with traditional evidence of reliance" to prevail on his remaining security claims related to the September 14, 2010, 10:00 a.m. conference call. *Id.* at 5, 9. "That is, [Lead Plaintiff] will have to show that [he] heard the September 14[, 2010, 10:00 a.m.] conference call and bought

and sold [Best Buy's] stock because of that call . . . ." *Id.* at 9.

### 3. Motion to Amend

Lead Plaintiff now moves for leave to file his proposed second amended class complaint. *See* ECF No. 284. He argues that "discovery has . . . shown that the allegations in the [First Amended Class Complaint] to be manifestly correct" and the "[proposed second amended class complaint] identifies three additional materially false and misleading statements made in Best Buy's September 14, 2010, 8:00 a.m. press release, not previously alleged . . . ." ECF No. 286 at 11. Those statements are:

> We're still in the early stages of our Connected World strategy, but this quarter's results give me continued confidence that we're making progress in driving value through growth in connections for our customers, vendors and shareholders, said Brian Dunn, CEO of Best Buy. I want to thank our employees for delivering these strong results – especially a significant expansion in operating margin and earnings growth in a quarter with constrained consumer spending.
>
> * * *
>
> The comparable store sales results were driven primarily by a decline in customer traffic, partially offset by an increase in average ticket. . . . [L]ow double digit comparable store sales decline in TVs was driven by a low double-digit decline in unit sales and moderating price declines. . . . [D]omestic market share declined 50 basis points versus the comparable period last year for the three months ended July 2010. . . . The company noted that it continues to expect to increase its market share for the full fiscal year.
>
> * * *
>
> We have focused our efforts on improving operating margins and driving profitable growth in the business and are pleased with the progress we have made fiscal year-to-date in a challenging consumer spending environment, said Jim Muehlbauer, Best Buy's executive vice president and CFO. Based on the strong operating margin performance in the first half and share repurchases made year-to-date through the fiscal second quarter, we are raising our earnings per share guidance by 10 cents to $3.55 to $3.70.

ECF No. 289 at 60 (internal quotations omitted). Lead Plaintiff claims that "powerful new

evidence" related to these statements identified "in the [proposed second amended class complaint raise] additional false statements [regarding] the 8:00 a.m. press release . . . and lays out why the [press release] . . . was false and misleading and how the new facts, not previously available to the Court, render [S]afe [H]arbor protection inapplicable." ECF No. 286 at 4. Lead Plaintiff also argues that the proposed second amended class complaint shows that "[Best Buy's statements on September 14, 2010 (in both the 8:00 a.m. press release and during the 10:00 a.m. conference call), were false and misleading by omission." *Id.* at 23. As to Best Buy's November 2010 Black Friday statements, Lead Plaintiff claims that the allegations in the proposed second amended class complaint demonstrate that those "statements to investors were material in light of the true (but concealed) facts revealed through discovery." ECF No. 286 at 24.

At the hearing on the instant motion for leave to amend, Lead Plaintiff represented that the proposed second amended class complaint "draws from more than 50 internal documents, emails, reports, spreadsheets, all produced by Best Buy in this action." ECF No. 307 at 3. Lead Plaintiff maintains that "the strength of the new evidence presented . . . will survive any motion to dismiss challenge from [Best Buy] and thus amendment is not futile."*Id.* Lead Plaintiff also argues that "[n]ew evidence alleged in the [proposed second amended class complaint] demonstrates [that Best Buy's Black Friday statements] are actionable false statements" given "the degree to which they conflict with the true state of affairs and their significance to Best Buy's financial performance. Moreover, the statements are actionable because [Best Buy] omitted known material negative information required to make them not misleading." *Id.* at 24.

Lead Plaintiff argues that his proposed second amended class complaint raises: (1) plausible securities claims related to the previously dismissed September 14, 2010, 8:00 a.m. press release; (2) demonstrates that Best Buy's 2011 forecast is not subject to the PSLRA Safe Harbor provision;

(3) that Best Buy made omissions of material fact regarding the September 14, 2010, 8:00 a.m. press release and 10:00 a.m. conference call; and (4) Best Buy's subsequent November 24, 2010, and November 26, 2010, Black Friday statements constitute actionable security violations as well. *See generally* ECF No. 286. Lead Plaintiff also argues that he is not motivated by undue delay, bad faith, or dilatory motive in bringing this motion for leave to amend, nor will Best Buy suffer prejudice should this Court grant his request for leave. *See id.* at 27.

Best Buy opposes Lead Plaintiff's request for leave. *See generally* ECF No. 295. It argues that there is no good cause permitting amendment, *see generally id.*, and that it would be prejudiced by the proposed amendment. *See id.* at 22. Best Buy also argues that Lead Plaintiff's proposed amendments are futile, and unduly delayed. *See id.* at 24. Best Buy claims that the documents Lead Plaintiff claims constitute new evidence have been in his possession since mid-2014. *See id.* at 11.

In addition, Best Buy avers that the "new alleged misstatements are taken from the same [dismissed] September 14, 2010 press release . . . . Law of the case bars Plaintiffs from successively rolling out different statements from the same document, and asking the Court to revisit that document until Plaintiffs exhaust theories they previously chose not to pursue." *Id.* at 2. Best Buy argues that Lead Plaintiff "want[s] to end-run the Eighth Circuit's class certification decision, even . . . Judge Frank in a thoroughly reasoned decision held [he] cannot." *Id.* at 3. To that end, Best Buy claims that the District Court concluded that "some of the very same documents [Lead Plaintiff] now wish[es] to use to amend [his] complaint" could not be used in support of Lead Plaintiff's denied motion for leave to file a new motion for class certification on the September 14, 2010, 10:00 a.m. conference call claims. *Id.* at 12.

## B.     Legal Standard

Except in cases where a party may amend its complaint as a matter of course, the Federal

Rules of Civil Procedure state, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, there is no absolute right to amend . . . ." *Doe v. Cassel*, 403 F.3d 986, 990 (8th Cir. 2005). A district court may refuse to grant leave to amend pleadings for "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987). A motion to amend is futile if it cannot survive a motion to dismiss. *See Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008).[2]

When a party seeks to amend the complaint after the deadline provided in a court's pretrial scheduling order, however, Federal Rule of Civil Procedure 16 applies. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In addition, Rule 16(d) states that

---

[2]     Here, Lead Plaintiff's claims related to the September 14, 2010, 8:00 a.m. press release and Vitelli's November 24, 2010, Fox News interview have been dismissed. *See generally* ECF No. 78 The Eighth Circuit has held that "different considerations apply to motions [to amend a complaint] filed after dismissal." *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993). "[I]nterests of finality dictate that leave to amend should be less freely available after a final order has been entered." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 823 (8th Cir. 2009). Leave to amend a complaint after dismissal "will be granted if it is consistent with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief." *United States v. Mask of Ka–Nefer–Nefer*, 752 F.3d 737, 742–43 (8th Cir. 2014) (citing *Dorn v. State Bank of Stella*, 767 F.2d 442, 443–44 (8th Cir. 1985)). However, irrespective of whether leave to amend is sought pre or post judgment, it is appropriately denied when "'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *In Re: SuperValu, Inc., Customer Data Sec. Breach Liti.*, No. 14-MD-2586 (ADM/TNL), 2018 WL 1189327, *6 (D. Minn. March 7, 2018) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). However, given that Best Buy does not argue that the more stringent Rules 59(e) or 60(b) apply here, this Court will apply Rule 15(a)(2).

a pretrial [scheduling] order controls the course of the action unless the court modifies it." *Sherman*, 532 F.3d at 716 (internal citation omitted). "The interplay between Rule 15(a) and Rule 16(b) is settled in the [Eighth Circuit]. In *Popoalii*, [the Eighth Circuit] stated that '[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule.'" *Id.* (quoting *Popoalii v. Corr. Med. Serv.*, 512 F.3d 488, 497 (8th 2008) (citing Fed. R. Civ. P. 16(b) (emphasis in the original)). "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." *Id.*

Therefore, "Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)." *Id.*; *see e.g.*, *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437–38 (8th Cir. 1999) (reasoning that if a court solely considered "Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively [abrogate] Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."). Similarly, Local Rule 16.3(b)(1) states that "[a] party that moves to modify a scheduling order must . . . establish good cause for the proposed modification." L. R. D. Minn. 16.3(b)(1). Accordingly, because Lead Plaintiff filed the instant motion for leave to amend after the December 1, 2013, Scheduling Order deadline for amending pleadings, under Rule 16(b)(4), he must show that good cause justifies modifying the scheduling order. *See* Fed. R. Civ. P. 16(b)(4).

"The primary measure of good cause [under Rule 16(b)(4)] is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). While the prejudice to the nonmoving party resulting from the modification of the scheduling order may also be relevant, generally courts "will not consider prejudice if the movant has not been

14

diligent in meeting the scheduling order's deadlines." *Sherman*, 532 F.3d at 717; *see, e.g.*, *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (reasoning that under Rule 16(b), when the moving party has not shown diligence, the analysis need not proceed to, or consider, the nonmovant's prejudice). "[T]he 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enter.*, 193 F.R.D. 630, 632 (D. Minn. 2000). "[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation." *Grage v. N. States Power Co.*, Civil No. 12-2590 (JRT/JSM), 2014 WL 12610147, at *5 (D. Minn. Jan. 3, 2014) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340–41 (2nd Cir. 2000)).

## C.     Discussion and Analysis

### 1.      Rule 16(b)

Lead Plaintiff has not established the requisite good cause under Federal Rule of Civil Procedure 16(b) and Local Rule 16.3(b) to modify the Scheduling Order to grant his instant motion for leave to amend. Since the District Court's August 5, 2013, dismissal Order, this case has proceeded solely on claims arising of out Best Buy's September 14, 2010, 10:00 a.m. conference call; the claims related to the September 14, 2010, 8:00 a.m. press release and Vitelli's November 24, 2010, Black Friday Fox News statement were dismissed pursuant to the PSLRA Safe Harbor provision. *See generally* ECF No. 78. As to the remaining claims related to the September 14, 2010, 10:00 a.m. conference call, the Eighth Circuit and the District Court have now both denied Lead Plaintiff's attempt to certify the class. *See* ECF Nos. 240, 282.

The Scheduling Order in this case, entered on September 25, 2013, provides that motions to amend the pleadings must be filed by December 1, 2013, discovery must be completed by January

1, 2015, all non-dispositive motions must be filed by June 1, 2015, and all dispositive motions must be filed by August 1, 2015. *See* ECF No. 102 at 1–2. Plaintiffs did not move to amend their First Amended Class Complaint by the December 1, 2013, deadline. After the Scheduling Order was entered, this case, including discovery, proceeded for nearly a year until the provisional stay was entered on September 11, 2014. *See* ECF No. 223. The date the provisional stay was entered is significant because Lead Plaintiff was in possession of the discovery supporting the new allegations raised in his proposed second amended class complaint by, at latest, August 29, 2014, *see* ECF No. 297 2–4, with the vast majority of the discovery produced before March 6, 2014. *See id.* Although Lead Plaintiff argues the gravamen of his delay was the result of the stay, the documents containing the new allegations proffered in his instant motion for leave to amend were produced before the stay was entered.

Shortly after the provisional stay was entered, an indefinite stay was entered on October 22, 2014, "*pending appeal*" of the Eighth Circuit's review of the District Court's Order certifying the class on the remaining September 14, 2010, 10:00 a.m. conference call claims. ECF No. 235 at 3 (emphasis added). The Eighth Circuit's review of the District Court's class certification Order concluded on April 12, 2016, when it reversed the District Court. *See generally* ECF No. 240. While Lead Plaintiff argues that "[t]his matter has been stayed since the United States Court of Appeals for the Eighth Circuit accepted [Best Buy's] Rule 23(f) petition of this Court's Order certifying this action as a class action[,]" ECF No. 286 at 4, under the plain language of the District Court's Order, that stay terminated effective April 12, 2016, when the pending appeal was resolved.

Indeed, far from being stayed, this case has been the subject of substantial letter briefing and motion practice since the Eighth Circuit's April 12, 2016, resolution of the class certification issue. On June 30, 2016, after the Eighth Circuit denied Plaintiffs' request for an *en banc* hearing on the

question of class certification, the District Court requested that the parties submit letter briefing on the best way to properly proceed with this case; shortly thereafter, the parties submitted their respective positions. *See, e.g.*, ECF Nos. 250, 251, 256, 257, and 260. On January 6, 2017, the District Court held a case management conference entertaining the parties' respective positions. *See* ECF No. 262. On January 20, 2017, rather than moving for leave to amend, Lead Plaintiff opted to request leave to file a new motion on the issue of class certification regarding the remaining September 14, 2010, 10:00 a.m. conference call claims. *See* ECF No. 267. On June 23, 2017, the District Court denied that request. *See* ECF No. 282.

Lead Plaintiff subsequently waited another five months before filing the instant motion for leave to amend. That Lead Plaintiff's litigation strategy, after this case resumed, prioritized the issue of class certification on the remaining September 14, 2010, 10:00 a.m. conference call claims rather than seeking amendment of the operative Complaint does not satisfy the good cause standard contemplated by the Federal and Local Rules. *See, e.g.*, *Morrison Enter., LLC v. Dravo Corp.*, 638 F.3d 594, 611 (8th Cir. 2011) (reasoning that the plaintiff's "tactical choice" to pursue claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") did not demonstrate diligence or good cause to amend the Complaint to add additional claims under CERCLA after the amendment deadline had passed and the district court granted summary judgment in the defendant's favor).

During the hearing on the instant motion for leave to amend, Lead Plaintiff argued Eighth Circuit law provides that when you have newly-discovered facts, a change in circumstance, or a "change in law you have good cause to amend a scheduling order." ECF No. 307 at 9. Assuming *arguendo* that Lead Plaintiff's characterization of Eighth Circuit precedent is correct, neither newly discovered facts, a change in circumstances, or a change in the law support Lead Plaintiff's request

here.

As to the September 14, 2010, 8:00 a.m. press release, Lead Plaintiff claims that "powerful new evidence . . . not previously available to the Court, render [PSLRA] [S]afe [H]abor protection inapplicable." ECF No. 286 at 4. Lead Plaintiff argues that this evidence is newly discovered, i.e., was "'not available to [him] at the time the prior pleading was filed.'" *Id.* at 10 (quoting *In re Nash Finch Co. Sec. Litig.*, 338 F. Supp. 2d 1037, 1038 (D. Minn. 2004)). Aside from it not being entirely clear, which prior pleading Lead Plaintiff maintains that the newly discovered facts are related to, the case upon which Lead Plaintiff relies, *In re Nash Finch Co. Securities Litigation* is inapposite; that case addressed the utility of purportedly newly discovered evidence in the context of a motion to amend judgment under Federal Rule of Civil Procedure 59(e), rather than Federal Rule of Civil Procedure 16(b)(4). In the context of Rule 16(b)(4), the salient question is whether good cause justifies modification of the expired scheduling order amendment deadline; that certain facts were ostensibly not previously available to the District Court or this Court is not dispositive. *See Sherman*, 532 F.3d at 717. Moreover, this Court cannot conclude that the Lead Plaintiff's purportedly newly discovery facts proffered in support of the proposed second amended class complaint are actually newly discovered. The September 14, 2010, 8:00 a.m. press release has been available to Lead Plaintiff since the outset of this case. That Lead Plaintiff has identified different statements from the 8:00 a.m. press release that he now contends are actionable fails to demonstrate that those statements were newly discovered or not previously available. Put differently, Lead Plaintiff has conflated the discovery of new arguments with the discovery of new evidence.

In addition, as to both Best Buy's September 14, 2010, 8:00 a.m. press release and 10:00 a.m. conference call, Lead Plaintiff has been in possession of the discovery comprising the new allegations raised in the proposed second amended class complaint since, at latest, August 29, 2014,

*see* ECF No. 297 2–4, with the vast majority of the documents produced before March 6, 2014. *See id.* Lead Plaintiff acknowledged that the "proposed second amended complaint draws from more than 50 internal documents, emails, reports, spreadsheets, all produced by Best Buy in this action." ECF No. 307 at 3. Lead Plaintiff argues that "numerous courts have permitted or endorsed the amendment of a complaint based on evidence produced in discovery in a PSLRA case." ECF No. 286 at 11. However, the cases Lead Plaintiff cites do not stand for the improvident proposition that documents admittedly produced through discovery long before leave to amend is sought constitute either newly discovered evidence or support a good cause showing in the context of Rule 16(b)(4), nor do those cases involve the type of substantial delay and lack of diligence present in this case.

Crucially, this case resumed on April 12, 2016, and on June 30, 2016, after the Eighth Circuit denied Plaintiffs' request for an *en banc* hearing, the District Court invited proposals regarding how to move the case forward in light of the Eighth Circuit's remand. From that time, armed with the very discovery proffered here, Lead Plaintiff waited eighteen months before moving for leave to amend. To the extent these facts were not previously available to either the District Court or this Court is attributable to either Lead Plaintiff's tactical decision to emphasize class certification or lack of diligence in moving for leave to amend the Scheduling Order. Either basis for the delay fails Rule 16(b)(4).

Similarly, as to Vitelli's November 24, 2010, Fox News interview, the facts proffered in the proposed second amended class complaint are not newly discovered. Lead Plaintiff acknowledges that the facts related to these claims raised in the class complaint were "revealed through discovery." ECF No. 286 at 24. Therefore, the fact that Lead Plaintiff waited eighteen months to move for leave to amend fails Rule 16(b)(4).

Regarding a change in circumstance, on June 30, 2016, when the District Court invited the

parties to submit letter briefing on how the case should proceed in light of the Eighth Circuit's reversal, Lead Plaintiff had the discovery he relies on now, but did not move for leave to amend. Similarly, during the January 6, 2017, case management conference, and on January 20, 2017, when Lead Plaintiff formally requested leave to file a new motion for class certification on the September 14, 2010, 10:00 a.m. conference call claims, Lead Plaintiff had the very discovery used in support of the instant motion for leave to amend, but, ultimately, did not move for leave to amend. In addition, after the District Court denied Lead Plaintiff's request for leave to file a new motion for class certification on the remaining September 14, 2010, 10:00 a.m. conference call claims, Lead Plaintiff waited five months before finally moving for leave to file his proposed second amended class complaint.

Chronologically, the instant motion for leave to amend was filed almost four years after the Scheduling Order amendment deadline, over three years after the non-dispositive motion deadline, eighteen months after the case resumed from the Eighth Circuit's remand, approximately sixteen months after the Eighth Circuit denied Plaintiffs' request for an *en banc* hearing, approximately a year after Lead Plaintiff notified the District Court that he would not be filing a petition for *certiorari* on the issue of class certification to the Untied States Supreme Court, and five months after the District Court denied Lead Plaintiff's attempt to revive the issue of class certification after the Eighth Circuit's denial, and during the vast majority of that time, Lead Plaintiff had the requisite discovery. From this Court's perspective, there is no changed circumstance that modification of the Scheduling Order would ameliorate; only Lead Plaintiff's attempt to certify the class on the September 14, 2010, 10:00 a.m. conference clams, at the expense of timely moving for leave to amend. The unfavorable outcome on the class certification issue cannot support an "extremely tardy pleading-amendment motion." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012). That

Lead Plaintiff waited five "months after the district court denied [his request for leave to file a motion] for class certification . . . is further evidence of [his] lack of diligence." *Id.*; *see, e.g., Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir.2003) (holding that the district court did not abuse its discretion by denying the plaintiff's motion to amend their complaint to add punitive damages when the motion was filed seven weeks before the conclusion of discovery, but ten months after the district court entered the scheduling order and the plaintiff provided no reason why the punitive damage claim could not have been alleged earlier and no good cause for late filing of motion to amend). Accordingly, a change in circumstances does not justify Lead Plaintiff's lack of diligence here.

Finally, as to a change in law, Lead Plaintiff offers *Ryan v. Ryan*, 889 F.3d 499 (8th Cir. 2018). In *Ryan*, the plaintiff, a minority shareholder of closely held corporate stock, brought security claims under § 10(b) and Rule 10b-5 of the Securities Exchange Act and Nebraska law in connection with the defendants' redemption of her stock, and common law breach of fiduciary duty, shareholder oppression, conversion, tortious interference with business expectancy, unjust enrichment, fraudulent misrepresentation and inducement, and breach of contract claims. *See id.* at 502, 504. The district court granted the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and denied the plaintiff's post-dismissal motions to alter or amend the judgment and for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 59(e). *See id.* at 502. The Eighth Circuit affirmed dismissal of the plaintiff's complaint, but remanded for further consideration of whether the plaintiff's post-dismissal motion to alter or amend under Rule 59(e) "presented newly discovered evidence warranting alteration of the order dismissing her breach of contract claim." *Id.* Specifically, the Eighth Circuit concluded that evidence that the plaintiff contended was newly discovered, a 2012 valuation report, produced after briefing on the motion to

dismiss, but before the order was issued, should be analyzed by the district court to determine whether the evidence was, in fact, newly discovered. *See id.* at 509. The Eighth Circuit reasoned that:

> [The d]efendants argue that the 2012 Valuation cannot qualify as newly discovered evidence because [the plaintiff] avers that she received the evidence from [the defendants] in December 2015, before the district court granted the motions to dismiss in February 2016. However, cases such as *Miller* stating that new evidence must be discovered after the court's order dealt with summary judgment motions. Here, the record reflects that a document in [the defendants'] custody and control that contradicts the factual basis for their motions to dismiss the breach of contract claim was first discovered after briefing and submission of those motions. Given the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits we are not prepared to rule categorically that this evidence may not qualify as newly discovered for purposes of reconsidering Rule 12(b)(6) dismissal of the breach of contract claim. Further inquiry is required.

*Id.* (internal citation omitted).

*Ryan* does not support Lead Plaintiff's assertion of a change in the law. First, *Ryan* does not announce a new standard for judicial consideration of newly discovered evidence. The Eighth Circuit simply remanded the issue of newly discovered evidence to the district court because it was not "prepared to rule categorically" on the issue. *Id.* Second, *Ryan* is inapposite. To the extent it addressed the legal standard attendant to newly discovered evidence, that exposition was not in the context of the good cause standard mandated by Federal Rule of Civil Procedure 16(b)(4). *Id.* at 507. Finally, *Ryan* is factually distinguishable. In *Ryan*, the ostensibly newly discovered 2012 valuation report was produced in December 2015, after the defendants filed their motion to dismiss, but before the district court issued its order grating that motion. Here, the purportedly newly discovered evidence was produced long before the instant motion for leave to amend was filed. To that end, the plaintiff in *Ryan* moved for leave to amend her complaint promptly after the defendants produced the purportedly newly discovered evidence. *See id.* at 508.

Here, the District Court has not recently entertained a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), nor a post judgment motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e). The most recent matter entertained was Lead Plaintiff's January 20, 2017, request for leave to move to certify the class on the remaining September 14, 2010 10:00, a.m. conference call claims. As explained *supra*, Lead Plaintiff had the evidence relied upon in requesting leave to amend, since at latest August 29, 2014.

In addition to *Ryan*, during the hearing on the instant motion for leave to amend, Lead Plaintiff argued that "we have changed law. We have now to navigate *Halliburton II*, which allows defendants to come forward and show a lack of price impact. That law was not present when -- when we moved for class certification. " ECF No. 307 at 28–29. Although Lead Plaintiff is correct, *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (*Halliburton II*), was not decided when the District Court certified the class on August 6, 2014, regarding the September 14, 2010, 10:00 a.m. conference call claims, *Halliburton II* was decided well before the Eighth Circuit and District Court's 2016 and 2017 examinations of the issue of class certification on those claims. The impact, scope, and application of *Halliburton II* has been extensively argued before both the Eighth Circuit and the District Court. Indeed, the holding has affected the contours of the class certification issue in this case, and is not, at this stage of the proceeding, a change in the law.

In sum, neither newly discovered facts, a change in circumstance, or a change in law justify Lead Plaintiff's belated motion for leave to amend. "The accessibility of the Courts would have no particular societal benefit if the actions so filed were not able to be timely brought to Trial." *Archer Daniels Midland Co. v. Aon Risk Serv., Inc.*, 187 F.R.D. 578, 583 (D. Minn. 1999). "This fundamental truth, clearly articulated in [Federal Rule of Civil Procedure 1], underscores the focus of Rule 16(b) on the diligence of the party seeking to modify a Scheduling Order, as opposed to .

. . unpersuasive excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion to Amend." *Scheidecker*, 193 F.R.D. at 632 n.1 (citations omitted). Considering how long Lead Plaintiff has possessed the discovery used to support the instant motion for leave to amend, and how long, armed with that discovery, Lead Plaintiff has waited to bring this motion while at the same time opting to pursue the class certification issue on the remaining September 14, 2010, 10:00 a.m. conference call claims, this Court must conclude that he has not shown the required good cause nor been diligent in moving for leave to amend. *See Rahn*, 464 F.3d at 822. As a result, Lead Plaintiff's motion for leave to amend is denied pursuant to Federal Rule of Civil Procedure 16(b)(4).

### 2. Rule 15(a)

Although this Court has concluded that Lead Plaintiff's motion for leave to amend fails to satisfy Federal Rule of Civil Procedure 16(b)(4), this Court briefly notes that Lead Plaintiff's motion for leave to amend also fails an undue delay analysis under Federal Rule of Civil Procedure 15(a)(2). Under Rule 15(a)(2) a court should freely give leave when justice so requires "giving plaintiff an opportunity to test claims on the merits . . . . [O]nly limited circumstances justify a refusal to grant leave to amend pleadings: undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders*, 823 F.2d at 216. Undue delay alone is insufficient to deny leave to amend a complaint. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981). Rather, denial of leave to amend under Rule 15(a)(2) is appropriate only if the undue delay results in prejudice to the opposing party. *See id.*

Here, Best Buy has spent significant time and resources litigating the plausibility of the September 14, 2010, 8:00 a.m. press release and Vitelli's November 24, 2010, Fox News interview and the application of the PLSRA Safe Harbor to those claims. Those claims have long since been

dismissed; a dismissal that Plaintiffs did not contest or move for reconsideration of. After the case resumed on April 12, 2016, the District Court invited the parties to propose how best to move the case forward. In his representations to the District Court, Lead Plaintiff was singularly focused on relitigating the issue of class certification on the September 14, 2010, 10:00 a.m. conference call claims, rather than amending the First Amended Class Complaint. Lead Plaintiff had ample opportunity, buttressed by the discovery produced at latest in August 2014, to move for leave to amend. That he declined to do so for eighteen months constitutes undue delay. *See, e.g., In re SuperValu, Inc.,* 2018 WL 1189327, at *8 (reasoning that "allowing [the plaintiffs'] eleventh hour attempt to resuscitate its complaint with previously rejected factual contentions is inexcusable delay.").

In addition to undue delay, granting Lead Plaintiff's motion for leave to amend would prejudice Best Buy. Specifically, granting Lead Plaintiff's motion for leave to amend based on the September 14, 2010, 8:00 a.m. press release and Vitelli's November 24, 2010 Black Friday Fox News interview is redolent of restarting this litigation on a fourth operative complaint in a case that has proceeded before both the District Court and Eighth Circuit at different junctures for seven years on matters already litigated and decided. During the seven year pendency of this case, the parties have engaged in discovery, produced deponents, and extensively argued the issues raised in Lead Plaintiff's instant motion for leave to amend. Fundamentally, Best Buy "would be prejudiced by having to defend a revived action that is based on previously rejected arguments."*Id.* Accordingly, Lead Plaintiff's motion for leave to amend is also denied under Rule 15(a)(2) because the request was unduly delayed and Best Buy would suffer prejudice. *Sanders*, 823 F.2d at 216.

### 3.      Law of the Case Doctrine

A final consideration warranting denial of Lead Plaintiff's motion for leave to amend is the

law of the case doctrine. Lead Plaintiff's proposed second amended class complaint seeks to revive both the previously dismissed claims related to the September 14, 2010, 8:00 a.m. press release and Vitelli's November 24, 2010, Black Friday Fox News interview, and requests that this Court declare "this action to be a proper class action pursuant to Fed. R. Civ. P. 23." ECF No. 290 at 168. Those issues have been thoroughly litigated and decided in this case. On August 5, 2013, the District Court dismissed the claims related to September 14, 2010, 8:00 a.m. press release and Vitelli's November 24 2010, Fox News interview, concluding that those statements were not actionable under federal securities law. *See generally* ECF No. 78. Lead Plaintiff did not file a motion to reconsider the District Court's Order of dismissal of those claims.

After the claims relating to the September 14, 2010, 8:00 a.m. press release and Vitelli's November 24, 2010, Fox News interview were dismissed, the question of class certification regarding the remaining September 14, 2010, 10:00 a.m. conference call claims were extensively litigated before the District Court and Eighth Circuit. On January 31, 2014, Plaintiffs moved to certify the class on those remaining claims. *See* ECF No. 126. On August 6, 2014, the District Court, pursuant to Federal Rule of Civil Procedure 23, certified the class on those claims. *See* ECF No. 200. On April 12, 2016, the Eighth Circuit Court reversed the District Court's grant of class certification on those claims and remanded the case for further proceedings. *See generally* ECF No. 240. On June 1, 2016, the Eighth Circuit denied Lead Plaintiff's petition for an *en banc* hearing on the class certification issue. *See* ECF No. 244. On January 20, 2017, Lead Plaintiff formally requested leave to file a new motion for class certification on the remaining September 14, 2010, 10:00 a.m. conference call claims and offered supporting case law and evidence. *See* ECF No. 267. However, on June 23, 2017, the District Court denied Lead Plaintiff's request for leave to file a new motion for class certification. *See* ECF No. 282. Lead Plaintiff did not move for reconsideration of the

District Court's denial of his request for leave to file a new motion on the class certification issue.

"[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Morris v. Am. Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir.1993). "This principle applies to both appellate decisions and district court decisions that have not been appealed." *Alexander v. Jensen-Carter*, 711 F.3d 905, 909 (8th Cir. 2013) (citing *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 620 (8th Cir.2007)). A court "follow[s] earlier decisions, making an exception only if clear error or manifest injustice appears in the court's assertion of jurisdiction." *Id.* (internal citations omitted).

Here, the District Court has already determined that the September 14, 2010, 8:00 a.m. press release is not actionable; specifically because the statement is immunized from liability under the PSLRA Safe Harbor provision. *See generally* ECF No. 78. Lead Plaintiff's attempt to present a different portion of the press release countervails the law of case doctrine. The cautionary language was issued in tandem with the entire press release, not merely excerpts of it. The law of the case doctrine precludes Lead Plaintiff from extricating different parts of the same September 14, 2010, 8:00 a.m. press release that the District Court has already concluded was protected by common cautionary language under the PSLRA Safe Harbor provision. *See Alexander*, 711 F.3d at 909.

As to the 2010 Black Friday statements, the District Court ruled that Vitelli's November 24, 2010, statement was immaterial "hyperbole." ECF No. 78 at 21. Although Lead Plaintiff attempts to recast the statement, the District Court's immateriality determination regarding that interview remains the law of the case. *See id.* Because this Court can "detect no clear error or manifest injustice in these holdings, they continue to govern this case." *Id.*

Finally, at the hearing on the instant motion for leave to amend, Lead Plaintiff stated that

he had "assembled a second amended complaint that [h]e believe[s] is going to overcome any motion to dismiss, [is] going to obtain class certification and [is] going to allow this case to move forward." ECF No. 307. However, the issue of class certification on the remaining September 14, 2010, 10:00 a.m. conference call has been exhaustively litigated in this case. On June 23, 2017, in light of the Eighth Circuit's reversal and remand, the District Court denied Plaintiff's request to file a new motion for class certification. The District Court reasoned that:

> Here, the facts against a new motion for class certification are [stark]. The Eighth Circuit did not reverse the order granting certification based on an issue of discovery. Instead, the Eighth Circuit concluded that the September 14 conference call had no price impact. . . .The Eighth Circuit squarely decided this issue, and like in *BioPay*, this Court cannot revisit the issue. Thus, the Court denies Plaintiffs request to file a new motion for class certification. Because the Eighth Circuit found that Plaintiffs failed to show price impact, Plaintiffs will have to proceed with traditional evidence of reliance. That is, Plaintiffs will have to show that they heard the September 14 conference call and bought or sold the stock because of the call. As explained in *Halliburton II*, this individualized inquiry is not suitable for a class action. *See Halliburton II* at 2416 ("Without proof of those prerequisites, the fraud-on-the-market theory underlying the presumption completely collapses, rendering class certification inappropriate.").

ECF No. 282 at 8–9 (internal citations omitted). This Court finds no compelling reason or "clear error or manifest injustice in these holdings." *See Alexander*, 711 F.3d at 909. Indeed, this Court does not find it appropriate to permit amendment based on an issue competently decided by the Eighth Circuit and District Court. After seven years of litigation, and in light of the Eighth Circuit and District Court's rulings, this case must now proceed as an individual action based on the September 14, 2010, 10:00 a.m. conference call.

## D. Motion to Compel

On September 4, 2014, Plaintiffs moved, pursuant to Federal Rule of Civil Procedure 26(c) and "the Court's Protective Order" to compel "Best Buy to reverse the indiscriminate and improper designation of documents Highly Confidential, and to search for and Produce documents from

personal e-mail and text messages." ECF No. 213 (internal citations omitted). Before Best Buy was required to respond and before the matter was heard on oral argument, the District Court provisionally stayed the case on September 11, 2014, and indefinitely stayed the case on October 22, 2014 pending the Eight Circuit's review. *See* ECF Nos. 223, 235. After the District Court invited the parties to submit letter briefing in June of 2016, on how to properly move the case forward in light of the Eighth Circuit's reversal and remand of the class certification of the remaining September 14, 2010, 10:00 a.m. conference call claims, neither Lead Plaintiff nor Best Buy raised the need to complete briefing or for a hearing on Plaintiff's motion to compel. *See* ECF Nos. 256, 257, 258, and 260. Similarly, during the District Court's January 6, 2017, case management conference, the parties were silent on the pending motion to compel. *See* ECF No. 266.

As it stands, the instant motion to compel has not been fully briefed and is not ripe for disposition. Given that it was filed nearly four years ago, has not been fully briefed, has not been set for oral argument, and that no party during the 2016 case management conference or 2017 letter briefing expressed an interest in having the matter adjudicated, this Court will deny Lead Plaintiff's motion to compel without prejudice. In this Court's view, the class certification issue and long delay has likely obviated the need for judicial resolution of the instant motion to compel. Lead Plaintiff may raise the matter again, if necessary.

E.    **Sealing**

On a final note, this Court observes that the parties have not moved to maintain the seal over several docket entries filed in conjunction with the instant motion for leave to amend. *See* ECF Nos. 286, 289, 290, and 295. Local Rule 5.6(d)(2) imposes strict time-limits on when parties are required to move to maintain the seal over a temporality sealed docket entry. The parties are instructed to file a joint motion regarding continued sealing in conformity with the Local Rule 5.6(d)(2) within ten

(10) days of this Order or risk having those docket entries unsealed.

**F.     Conclusion and Order**

Because Lead Plaintiff's proposed second amended class complaint fails to satisfy either Rule 16(b)(4) or 15(a)(2) of the Federal Rules of Civil Procedure, or Rule 16.3 of the Local Rules for the District of Minnesota, his motion for leave to file a proposed second amended class complaint must be denied. Accordingly, based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Lead Plaintiff's motion for leave to file a second amended class action complaint for violation of the federal securities law (ECF No. 284) is **DENIED**. In addition, Lead Plaintiff's motion to compel (ECF No. 213) is **DENIED without prejudice**.

DATED: July 11, 2018                                             *s/Franklin L. Noel*
                                                                FRANKLIN L. NOEL
                                                                United States Magistrate Judge